Turner, J.
 

 The first question to be disposed of is whether we have before us a final order.
 

 We hold here, as we did in the case of
 
 State, ex rel. K-W Ignition Co.,
 
 v.
 
 Meals et al., Judges,
 
 93 Ohio St., 391, 113 N. E., 258, that, where the general equities of the case have been found in favor of the plaintiff and an accounting has been decreed, while a further order of the court will be necessary to carry into effect the
 
 *330
 
 rights settled by the decree, such further order is merely auxiliary to or in execution of the decree of the court made on the merits of the case. Therefore, the decree of the Court of Appeals in this case is a final order.
 

 On account of the length of the statement of facts, we epitomize the issue in the following language taken from appellants’ brief (omitting references to the record):
 

 ‘ ‘ By December 23, 1935, the Reconstruction Finance Corporation loan had been reduced sufficiently so that The North American Mortgage Loan Company was able to negotiate a straight bank loan from The Central National Bank of Cleveland, Ohio, at 3 per cent interest for sufficient funds to pay off their Reconstruction Finance Corporation loan in full.
 

 “The North American Mortgage Loan Company, about this time, had on hand among the assets received from the bank certain defaulted bonds and securities which it was deemed advisable to sell and convert into more productive securities. On the above date, by proper action of the board of directors, the defendants-appellants, the president of The North American Mortgage Loan Company was authorized to sell these defaulted bonds and securities and to buy other bonds or equities as appeared in his judgment to be for the best interest of the company, and to report all transactions to the board as made.
 

 “Pursuant to this authority the president of The North American Mortgage Loan Company proceeded to sell the defaulted bonds and to purchase other securities, in each instance reporting the same to the board of directors, the defendants-appellants herein, who all approved the action. These transactions were handled through brokerage houses and because of the unlisted nature of the bonds and securities being sold, and in order to secure the purchases of the new securities pending such sale, certain other assets of The
 
 *331
 
 North American Mortgage Loan Company were pledged with the brokers to secure the account pending realization from the sale of the defaulted, unlisted securities which were being sold. This pledge of assets to 'secure' the brokers’’ account appeared in the statement of the assets and liabilities of The North American Mortgage Loan Company published as of September 3, 1937.
 

 “It is on account of the reinvestment of the funds realized from the sale of these defaulted bonds and securities in other more productive securities that the plaintiff-appellee brought this action.
 

 “The plaintiff-appellee contended that the purchase of any securities with the funds received from the sale of the defaulted bonds was
 
 ultra vires
 
 and in violation of the provisions of the plan and contract for the reorganization of the bank and payment of the participation certificate holders. It is contended that under the plan and the contract the defendants-appellants as officers and directors of The North American Mortgage Loan Company had no authority to engage in the transactions shown by the evidence and that their only authority was to sell the assets received from the bank and pay over the cash proceeds realized therefrom in payment of the participation certificates.
 
 The plaintiff - appellee makes no claim amd there is no evidence in this case of any bad faith, fraud or self-dealing on the part of the defendants-appellants in the reinvestment of these funds as shown by the evidence.
 
 The sole claim of the plaintiff-appellee is that these transactions were unauthorized and that being so unauthorized, they constitute a breach of trust, rendering the defendants liable to account to the plaintiff for any losses which may have arisen by reason of these rtansactions.
 

 ‘‘ The Court of Appeals found that under the plan of reorganization of The North American Trust Company and under the contract between The North American
 
 *332
 
 Trust Company and The North American Mortgage Loan Company that The North American Mortgage Loan Company became the trustee of a trust of which the assets transferred to The North American Mortgage Loan Company were the córpus and the participation certificate holders were the beneficiaries. The Court of Appeals further found that under the terms of the trust The North American Mortgage Loan Company had no authority or power to invest any of the assets derived from the sale of stocks, bonds and other securities in other stocks, bonds and securities and that the defendants-appellants, The North American Mortgage Loan Company and the officers and directors thereof, in investing funds realized from the sale of defaulted stocks, bonds and other securities had committed breaches of trust rendering them liable to account to the beneficiaries of the trust for funds so invested and to reimburse the trust for any losses on account thereof and ordered the defendants-appellants to account to the plaintiff-appellee for all such amounts.”
 

 Appellants then state the question presented as follows :
 

 “The question presented in this case, as presented both in the trial court, the Court of Appeals and in this court, is as previously stated in this brief whether or not the defendants-appellants have committed a breach of trust by reinvesting the funds received from the sale of the defaulted bonds instead of immediately distrib-, uting the proceeds to the participation certificate holders.”
 

 Commenting upon the foregoing question, appellee states:
 

 “We agree with this statement with the following exceptions. The plaintiff has never claimed that cash received from liquidation must be
 
 immediately
 
 distributed ; but he has claimed that
 
 whenever distributed
 
 such cash must by the terms of the trust be distributed
 
 *333
 
 either to the creditors of the mortgage company or to the certificate holders and that the diversion of snch cash from the creditors and the certificate holders to the stock market was a breach of trust.
 

 “The question therefore narrows itself to this:
 
 Did the trustee breach its trust by purchasing securities tvith cash received from the sale of trusteed assets¶”
 

 Appellants admit that “The complete liquidation of all the assets and distribution of the proceeds was the ultimate object of the plan,” but contend that the authority to reinvest the funds realized from the sale of the defaulted securities is to be found in the corporate charter of The North American Mortgage Loan Company, the contract between The North American Trust Company and The North American Mortgage Loan Company, as well as the reorganization itself, and that the mortgage company was vested with authority “to reinvest the proceeds realized from the sale of assets in other assets so as to produce the greatest possible return to the certificate holders.” In short, appellants, without saying so in so many words, seek to have the certificate holders treated as stockholders of a corporation authorized to buy, sell and exchange securities. Clearly, these certificate holders may not be treated as stockholders. They are beneficiaries of an express trust.
 

 Much stress has been put on the wording of the contract where, after providing: ‘ ‘ The mortgage loan company being the owner of all ‘A’ assets, shall manage and control all-such assets and exercise all rights of absolute ownership therein,” it is said: “Subject only to its corporate powers and the provisions of said plan as herein recited, without any right of the bank therein. ’ ’ In the
 
 first‘
 
 whereas ’ ’ of the contract, after referring to the duties of the mortgage loan company in respect of “the administration of the trust, and the liquidation of the trust property by the mortgage loan company,” the following words were added: “Without,
 
 *334
 
 however, intending thereby to limit the authority of the mortgage loan company or its directors, under its charter or under the laws of Ohio relating to corporations * * ■
 

 These phrases do not appear in the plan submitted to the depositors. But even if they did, it would make no difference. The contract itself as well as the plan and the order of the Common Pleas Court approving the plan and contract all show conclusively that the mortgage loan company did not have the right of absolute ownership. Appellants in their brief and argument refer to the mortgage loan company as a trustee for the holders of the participation certificates. And it is not to be overlooked that the Common Pleas Court in authorizing the contract placed each of the directors under a bond of $10,000. As against the bank, the mortgage loan company was, of course, the absolute owner. So also for the purposes of the Reconstruction Finance Corporation loan.
 

 It is argued that the Reconstruction Finance Corporation insisted on the wide purpose clause of the mortgage loan company. However, we find nothing in the record on this subject. Suffice it to say that while the Reconstruction Finance Corporation had a right to dictate the terms on which it would loan money to the mortgage loan company it had no power to interfere with the rights of the depositors and furthermore, after its loan was paid, had no further interest in the situation.
 

 Especially in view of the dual purpose of the corporation, we are unable to see in the above-quoted language any authority for the investment of the proceeds of the sale of assets which the mortgage loan company held for liquidation.
 

 If the purpose clause of the mortgage loan company was considered a part of the authority of the trustee,
 
 *335
 
 why then was it found necessary to amend the plan by adding to the original the following paragraph:
 

 “The North American Mortgage Loan Company shall have the right, subject to the payment of the loan from Reconstruction Finance Corporation first to be made, unless such right by Reconstruction Finance Corporation is by it specifically waived, to purchase and retire outstanding certificates of participar tion for cash or in exchange for assets or property held by it under such terms and for such values as its board of directors may from time to time determine to be just and equitable to the mortgage company and the holders of the remaining outstanding certificates of participation.”
 

 The plan further provided:
 

 “Subject to the payment of the loan from Reconstruction Finance Corporation, said mortgage company shall, as often as in its opinion appears proper, apply cash realized from the liquidation of the assets so transferred to it by the bank together with dividends declared by the directors of said bank and paid to it as hereinbefore provided,
 
 in payment of said certificates of participation.
 
 Each such application and payment shall be made in
 
 pro rata
 
 amounts to the holders of said certificates of participation and the crediting of any such payment or payments to an unrestricted account in said bank in the name of the holder of record of any such certificate of participation shall constitute a receipt for the amount or amounts so credited.” (Italics ours.)
 

 It was also provided in the contract that: “All monies coming into the possession of the mortgage loan company on account of mortgage loan company assets shall be
 
 deposited,
 
 so far as is practicable, in the commercial department of the bank to the credit of the mortgage loan company; provided, however, that the
 
 *336
 
 mortgage loan, company may transfer from time to time, as it may determine such amounts or parts thereof to the savings department of the bank, or to other banks or financial institutions as it may find to be to its best interest.” (Italics ours.) The amended plan provided that interest at the rate of two and one-half per cent per annum would be paid on savings deposits.
 

 With these careful limitations upon the use of the proceeds of sale of assets, it is not reasonable to infer that ¡after all it was not necessary for the mortgage loan company or its directors to follow the plan of liquidation and distribution, but that instead the mortgage loan company might sell any of the assets and in the discretion of its board of directors invest in other securities to the end that it was hoped, as claimed by appellants, “to produce the greatest possible return to the certificate holders.”
 

 Not only do we find no authorization for any investment or speculation, but on the contrary we do find the following language in the plan:
 

 “In analyzing the following plan it should be borne in mind that the depositor and creditor is not being requested to sacrifice any value that he may now possess in the assets and property of The North American Trust Company, and that he is merely being requested to permit a division of said assets and property for the purpose of insuring a solvent, sound and liquid bank.”
 

 As stated in 40 Ohio Jurisprudence, 200:
 

 “Quite generally, a corporation may take the title to-property. Even if the corporation has not the capacity in the particular case to take the title, the trust will not fail because of that but a new trustee will be appointed.”
 

 Whether the mortgage loan company was qualified
 
 *337
 
 to do a trust business (Section 710-150, General Code) need not be inquired into here. The record shows that in cause No. 412093 in the Court of Common Pleas of Cuyahoga county, in a proceeding brought under Section 710-89a, General Code, the court found, according to its journal entry:
 

 • “It appearing to the court that The North American Mortgage Loan Company, by and with the approval of the Superintendent of Banks of the state of Ohio, has been duly incorporated under the laws of the state of Ohio to liquidate the assets to be turned over tc The North American Mortgage Loan Company for liquidation, as. provided in said plan as modified
 

 Section 710-89o, General Code, clothes the Court of Common Pleas with jurisdiction to authorize trust or participation certificates in assets set aside for the payment thereof.
 

 There was filed in cause No. 412093 an application for authority for the bank to resume business, in which a part of the relief asked for was a show cause order as follows:
 

 “Third — Why said The North American Trust Company should not turn over and deliver to The North American Mortgage Loan Company the assets, parts of assets and equities therein, as shall have been designated by the Superintendent of Banks of Ohio as undesirable to be retained in said The North American Trust Company
 
 for the ptirpose of liquidation of the same by The North Americam, Mortgage Loam Company amd the distribution of the funds arising from such liquidation in the manner and for the purposes mentioned in said plan as amended.”
 
 (Italics ours.)
 

 In the journal entry of the Court of Common Pleas made on the foregoing application it is recited: “It appearing to the court that The North American Mort
 
 *338
 
 gage Loan Company, by and with the approval of the Superintendent of Banks of tbe state of Ohio, has been duly incorporated under the laws of the state of Ohio
 
 to liquidate the assets to be turned over to The North American Mortgage Loan Company for liquidation, as provided in said plan as modified,
 
 and that a contract has been prepared between the trust company and the mortgage loan company defining the duties of the respective parties thereto, said contract between the trust company and the mortgage loan company is hereby approved by this court * * *.
 

 “The management of said The North American Mortgage Loan Company shall be vested in a board of directors composed of five members, one of whom shall be a director of the present bank, one of whom shall be a stockholder and not a director of the present or reorganized bank, and three of whom shall be depositors of the present bank who were not, prior to the appointment of a conservator, stockholders therein. Said directors shall receive no compensation except for extraordinary services,
 
 and each shall give a bond in the sum of
 
 $10,000
 
 to be approved by the court. AK
 
 W W
 

 “It is further ordered, adjudged, and decreed, that stock purchased by present stockholders in the bank, as reorganized shall, for a period of five years from and after the bank is licensed to resume normal business, be pledged with The North American Mortgage Loan Company
 
 for the benefit of the holders'of certificates of participation in pursuance of said plan,
 
 without intending to impose upon The North American Mortgage Loan Company any liability thereon except as pledged, in an amount equal to the par value of the stock now owned by such stockholders, otherwise the stock purchased in the reorganized bank by present stockholders, or others, shall not be pledged. In event
 
 *339
 
 the constitutional and statutory liability of present stockholders is not imposed within said five-year period, or in event the certificates of participation provided to be issued in said plan have been paid or retired within said period, said stock so pledged shall be returned to the respective owners thereof, except that stock so pledged may be transferred by the mortgage loan company [by] order of court [or] by operation of law or to permit a stockholder of the bank as reorganized to qualify as a member of its board of directors.” (Italics ours.)
 

 Not only the plan and the contract but the order of the Court of Common Pleas of Cuyahoga county show clearly that a trust was created for the purpose of
 
 liquidation
 
 and
 
 distribution of proceeds
 
 to the holders of the certificates of participation.
 

 In the absence of the arrangement made in this case, it would have been the duty of the Superintendent of Banks to take possession of this unsound or insolvent bank (Sections 710-89 and 710-91, General Code) and to proceed under Section 710-95, General Code, to liquidation, and as the insolvency of this bank took place prior to the amendment to Section 3, Article XIII of the Constitution of Ohio, effective July 1, 1937, the double liability of stockholders was in effect. Under Section 710-75, General Code, it was the duty of the Superintendent of Banks to enforce this individual liability of stockholders.
 

 The mortgage loan company was created to act in a dual capacity,
 
 i. e.,
 
 owner and trustee. In its own right as a corporation, it was first to borrow funds from the Reconstruction Finance Corporation and pledge the assets which it held as trustee for the certificate holders as security for the repayment of this loan. There was, therefore, necessity for the purpose clause of the corporation in dealing with these securities for the purpose of borrowing from and repaying to Reconstruction Finance Corporation. But after the
 
 *340
 
 Reconstruction Finance Corporation loan was satisfied, the authority to treat these assets as the abs'olute property of the corporation ceased, and from, that point on the mortgage loan company was to hold the assets as trustee for the certificate holders.
 

 “If property is transferred to a corporation partly for its own use and partly in trust for others, the corporation has capacity to administer the trust.” 1 Restatement of Trusts, 267.
 

 To be a trustee, it is necessary that the person (natural or corporate) have capacity to take title to the property. 40 Ohio Jurisprudence, 195
 
 et seq.
 

 For the purpose of paying off the Reconstruction Finance Corporation loan, it was necessary that the mortgage loan company have the power to sell. As stated in 40 Ohio Jurisprudence, 417, “there is no power presumed to exist in him [trustee] to sell the trust
 
 res.”
 
 See also 1 Restatement of Trusts, 501.
 

 The “plan,” which was specifically made a part of the contract, provided that “the management of said The North American Mortgage Loan Company shall be vested in a board of directors composed of five members * * *.” There was nothing said in the plan about the directors or the corporation having the right to exercise all its powers given by its charter in respect of handling or managing the assets once they became freed of the obligation to the Reconstruction Finance Corporation. The purchases in question did not take^place while the Reconstruction.Finance Corporation loan was unpaid. (The loan from the Central United National Bank has not been questioned.)
 

 As between the bank and the mortgage loan company there was merely a contract relationship; as between the mortgage loan company and the Reconstruction Finance Corporation there was merely a contract relationship; but as between the mortgage loan company and the certificate holders who were the equitable owners of the assets held by the mortgage loan com
 
 *341
 
 pany (subject to the payment of the Reconstruction Finance Corporation loan) there was the relationship of trustee and beneficiaries, and when the contract refers to “the administration of the trust” it is referring to the trust created by the plan submitted to the depositors and the Court of Common Pleas, the contract made in pursuance of such plan, and certificates of participation.
 

 Counsel for appellants have argued that the mortgage loan company had the right to exchange assets, and that while the transactions under question took the form of sales and purchases, they amounted in substance to exchanges. The complete answer to this claim is that the only exchange of assets authorized by the plan and contract is specifically limited to (a) transactions between the bank and the mortgage loan company and (b) to the exchange of assets for certificates of participation.
 

 As held by this court in the cases of
 
 City of Cleveland
 
 v.
 
 State Bank of Ohio,
 
 16 Ohio St., 236, and
 
 Taylor
 
 v.
 
 Galloway,
 
 1 Ohio, 232, the power to sell does not include the power to exchange. See, also, 63 A. L. R., 1003, annotation; 1 Restatement of Trusts, 509m; 2 Scott on Trusts, 1035, Section 190.9.
 

 While the facts are not on all fours with the instant case, the reasoning of
 
 Smith et al., Trustees,
 
 v.
 
 Fuller et al., Assignees,
 
 86 Ohio St., 57, 99 N. E., 214, is helpful here.
 

 The test here is not the measure of duties of directors to a corporation and its stockholders but the duties of a trustee to beneficiaries of a trust.
 

 Section 8623-55, General Code, provides in part:
 

 “All the capacity of a corporation shall be vested in and all its authority, except as otherwise provided in this act or in the articles in regard to action required to be taken, authorized or approved by shareholders, shall be exercised by a board of directors of
 
 *342
 
 not less than three persons, which shall manage and conduct the business of the corporation.” .
 

 The code of regulations of The North American Mortgage Loan Company provides:
 

 “The directors and officers of the company shall at all times conduct the affairs of the company in such manner as to carry out the letter as well as the spirit of the plan for reorganization of The North American Trust Company; and also as to any contracts entered into pursuant to the plan and as> a part of the reorganization of The North American Trust Company.”
 

 The law applicable to the defendants is illustrated by the following quotations:
 

 In 4 Pomeroy, Equity Jurisprudence (5 Ed.), 170, Section 1062, it is said:
 

 “Under the general obligation of carrying the trust into execution, trustees and all fiduciary persons are bound, in the first place, to conform strictly to the directions of the trust. This is .in fact the cornerstone upon which all other duties rest, the source from which all other duties take their origin. The trust itself, whatever it be, constitutes the charter of the trustee’s powers and duties; from it he derives the rule of his conduct; it prescribes the extent and limits of his authority; it furnishes the measure of his obligations. * *
 
 *
 
 A trustee can use the property only for the purposes contemplated in the trust, and must conform to the provisions of the trust in their true spirit, intent, and meaning, and not merely in their letter. If, therefore, through nonfeasance he omits to carry the trust into execution, or through misfeasance he disobeys the directions of the trust, he renders himself in some manner liable to the beneficiary whose rights have been thus violated.
 

 “Trustees, in carrying the trust into execution, are not confined to the very letter of the provisions. They have authority to adopt measures and to do acts which, though not specified in the instrument, are implied in
 
 *343
 
 its general directions and are reasonable and proper for making them effectual. This implied discretion in the choice of measures and acts is subject to the control of a court of equity, and must be exercised in a reasonable manner.”
 

 At page 179 of the same volume, Pomeroy says: “Wherever there is any
 
 tona fide
 
 doubt as to the true meaning and intent of provisions of the instrument creating the trust, -or as to the particular course which he ought to pursue, the trustee is always entitled to maintain a suit in equity, at the expense of the trust estate, and obtain a judicial construction of the instrument, and directions as to his own conduct.”
 

 In addition to the remedy suggested by Pomeroy, we have in Ohio the Declaratory Judgments Act, Section 12102-1
 
 et seq.,
 
 General Code.
 

 In 4 Pomeroy, Equity Jurisprudence (5 Ed.), 227, Section 1079, a breach of trust is defined as follows:
 

 “It might be supposed that the term ‘breach of trust’ was confined to wilful and fraudulent acts which have a
 
 quasi-Qvimmdl
 
 character, even if they have not been made actual crimes by statute. The term has, however, a broader and more technical meaning. It is well settled that every violation by a trustee of a duty which equity lays upon him, whether wilful and fraudulent, or done through negligence, or arising through mere oversight or forgetfulness, is a breach of trust. * # #
 

 “The term therefore includes every omission or commission which violates in any manner either of the three great obligations: already described: of carrying out the trust according to its terms, of care and diligence in protecting and investing the trust property, and of using perfect good faith. This broad conception of breach of trust, and the liabilities created thereby, are not confined to trustees regularly and legally
 
 appointed;
 
 they extend to all persons who are
 
 *344
 
 acting trustees, or who intermeddle with trust property. ’ ’
 

 In
 
 Duckett
 
 v.
 
 Mechanics’ Bank,
 
 86 Md., 400, 403, 38 A., 983, 39 L. R. A., 84, 63 Am. St. Rep., 513, it was said: “There can be no dispute that as a general principle all persons who knowingly participate or aid in committing a breach of trust are responsible for the money and may be compelled to replace the fund which they have been instrumental in diverting. * * * There is in such instances no primary or secondary liability as respects the parties guilty of, or participating in the breach of trust; because all are equally amenable. ’ ’
 

 In 2 Restatement of Trusts, 972, it is said:
 

 “A third person who, although not a transferee of trust property, has notice that the trustee is committing a breach of trust and participates therein is liable to the beneficiary for any loss caused by the breach of trust. ’ ’
 

 In 3 Scott on Trusts, 1767, it is said:
 

 “Any officer who knowingly causes the corporation to commit a breach of trust causing loss to a trust administered by the corporation is personally liable for the loss to the beneficiaries of the trust.”
 

 Under the terms of the plan and contract approved by the Court of Common Pleas in cause No. 412093, the mortgage loan company had the following options with respect to the use of the proceeds of sale of the trusteed assets:
 

 (a) To reduce the indebtedness to Central United National Bank;
 

 (b) To deposit same in the reorganized bank; either in the commercial department or as a savings account at 2% per cent per annum interest;
 

 (c) To deposit same in another bank or financial institution ;
 

 (d) Subject to the payment of the Reconstruction Finance Corporation loan, to apply same in
 
 pro tanto
 
 
 *345
 
 amounts to the payment of certificates of participation by depositing the cash in an unrestricted account in the bank;
 

 (e) To purchase certificates of participation as provided in the amended plan; and
 

 (f) To distribute the proceeds of sale to certificate holders (subject to payment of any prior lien).
 

 The doctrine of
 
 expressio unius est exclusio alterius
 
 applies.
 

 We agree fully with the findings and decree of the Court of Appeals. Accordingly, the decree of the Court of Appeals is affirmed.
 

 Decree affirmed.
 

 W'eygandt, C. J., Williams, Matthias, Hart and Zimmerman, JJ., concur.