ORVETS et al., Appellants,

v.

NATIONAL CITY BANK, NORTHEAST, et al.; Mayo, Appellee.

[Cite as *Orvets v. Natl. City Bank, Northeast* (1999), 131 Ohio App.3d 180.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 18975.

Decided Feb. 10, 1999.

*Michael S. Miller, Robert G. Palmer* and *Paul A. Bodycombe,* for appellants.

*Frederick M. Lombardi, Patrick J. Keating* and *Karen Kelly Grasso,* for appellee John Mayo.

DICKINSON, Judge.

Plaintiffs Daniel Orvets, Martin Orvets, and Gregory Orvets have appealed from an order of the Summit County Common Pleas Court that granted defendant John Mayo summary judgment in this breach-of-fiduciary-duty case. By their complaint, plaintiffs alleged that in a number of transactions since 1981, Mayo breached a fiduciary duty that he owed to a trust of which they are remaindermen. In granting Mayo's motion for summary judgment, the trial court determined that the applicable statute of limitations had expired for all but one of the transactions about which plaintiffs were complaining. It further determined that there were no genuine issues of material fact and Mayo was entitled to judgment as a matter of law on the merits in regard to that final transaction.

Plaintiffs have argued to this court that the trial court (1) incorrectly determined that the "discovery rule" did not apply to extend the statute of limitations applicable to their claims against Mayo, (2) incorrectly determined that Ohio's saving statute did not apply in this case, and (3) incorrectly determined that there were no genuine issues of material fact and that Mayo was entitled to judgment as a matter of law on the merits of plaintiffs' single claim that the trial court did not believe was barred by the statute of limitations. This court reverses and remands this matter to the trial court because the "discovery rule" does apply to plaintiffs' claims in this case and Mayo did not carry his burden of establishing that there were no genuine issues of material fact and that he was entitled to judgment as a matter of law on the merits of the one claim that the trial court did not believe was barred by the statute of limitations. This court does not reach the issue of whether the saving statute is applicable in this case because, in view

of this court's determination that the discovery rule is applicable, on remand, the trial court must determine when Mayo's alleged misconduct was "discovered" for purposes of the statute of limitations and, depending upon that determination, plaintiffs' argument regarding the savings statute may be moot.

## I

Plaintiffs are sons of Leonard Orvets ("Mr. Orvets"). Mr. Orvets died on February 28, 1981. During his lifetime, Mr. Orvets engaged in the real estate business as an equal partner with defendant John Mayo in three separate partnerships and as an equal owner of a corporation with Mayo. Among other things, Mayo and Mr. Orvets, through the partnerships and the corporation, owned a number of parcels of commercial real estate. Upon his death, Mr. Orvets's interests in the partnerships and the corporation passed to a trust he had established. National City Bank, Kenneth Melek, and Loretta Orvets (Mr. Orvets's wife) were cotrustees of the trust.[1] Plaintiffs are three of the four remaindermen of the trust.

The partnership agreements for the three partnerships provided that, in the event of the death of one of the two partners, the other partner would purchase the interest of the decedent in the partnerships. In addition, Mr. Orvets and Mayo had entered into a stock purchase agreement that provided that the survivor of the two would purchase the shares of the other in the corporation. Upon Mr. Orvets's death, however, Mayo was apparently unable to secure financing necessary for him to buy the trust's interests in the partnerships and the corporation.

On April 2, 1982, the trustees and Mayo entered into an agreement that provided Mayo authority to liquidate the real estate that had previously been owned by Mr. Orvets and Mayo and that was now held by the trust and Mayo. The agreement, which recited that it was "made as of the 1st day of March, 1981," provided that Mayo would carry out the liquidation at his "sole and exclusive discretion, and upon prices, terms and conditions determined by [him], including, but not limited to, whether a sale shall be for cash or on an installment basis, and if not for cash, the terms and security for payment." It further provided that Mayo would be devoting a substantial amount of his working time to the sale of the real estate he and the trust held and that he would "use his best efforts to obtain terms and prices most beneficial to the parties." In return for his efforts, he was to be paid $5,250 per month, and be reimbursed for his reasonable business expenses. The net proceeds of any sales, "after deducting

---

1. National City Bank is the successor of Dollar Savings & Trust Company of Youngstown, the named trustee in the trust agreement.

Mayo's compensation and expenses as aforesaid, and all other costs of sale including real estate commissions," were to be divided equally between the trust and Mayo.

The agreement also provided that Mayo would manage two shopping center properties that he and the trust owned. For those services, he was to be paid $1,000 per month.

The trust agreement by which Mr. Orvets established the trust at issue in this case provided that, upon the death of Mrs. Orvets, the assets of the trust would be divided and distributed, *per stirpes,* to the remaindermen, half when they reached the age of twenty-five and the other half when they reached the age of thirty. On February 12, 1983, the trustees, Mayo, and the remaindermen entered into an agreement in which they recited that the best interests of the trust and the remaindermen would be served by continuing the liquidation of the real estate in which the trust and Mayo held an interest. Accordingly, the remaindermen waived their rights to receive distributions from the trust upon reaching the ages of twenty-five and thirty following Mrs. Orvets's death, and Mayo, the trustees, and the remaindermen agreed that the earlier agreement, pursuant to which Mayo was liquidating real estate in which the trust had an interest, would be extended until ten years after Mrs. Orvets's death. Mrs. Orvets died on January 2, 1989.

On January 19, 1995, plaintiffs filed an action in the Summit County Common Pleas Court, case No. CV 95 01 0234, against National City Bank, Melek, and Mayo.[2] In a section of their complaint that was captioned "Background," plaintiffs recited the establishment of the trust by Mr. Orvets and averred that National City Bank had convinced Melek and Mrs. Orvets to enter into the April 2, 1982 agreement authorizing Mayo to liquidate the trust's interest in the various parcels of real estate "despite the fact that the Bank was warned by members of its own trust department that the [April 2, 1982, agreement] would place too much control in Mayo, who was not a trustee, but rather the major creditor of the trust." They further alleged that they had entered into the February 12, 1983 agreement extending the April 2, 1982 agreement under "economic duress by Mayo and the Bank because Mayo appeared at the hospital and/or [Mrs.] Orvets' home where it was believed by Plaintiffs that [Mrs.] Orvets was dying" and "threatened ruination of the trust because of tax obligations unless [the] Agreement was signed." According to plaintiffs, National City Bank allowed Mayo "to treat the trust assets as his own without regard to the benefit of the trust remaindermen." They also specifically averred that the "Bank approved of

---

2. John Orvets, a fourth son of Mr. and Mrs. Orvets and also a remainderman of the trust, was named a defendant as someone who "may have an interest in this litigation."

Mayo's self-dealing" and gave an example of a transaction pursuant to which Mayo allegedly sold trust property to an entity known as the Mayo Family Limited Partnership for less than its appraised value.

Following the "Background" section of their complaint, plaintiffs asserted three claims for relief. By their first claim for relief, which they parenthetically captioned "Breach of Fiduciary Duty," they alleged that National City Bank and Melek "totally abdicated their duties as trustees by giving Mayo total discretion over the trust assets, by permitting Mayo's blatant self-dealing and by ratifying Mayo's diminution and depletion of the trust assets." By their second claim for relief, which they parenthetically captioned "Negligence," they alleged that National City Bank and Melek "were negligent in the administration of the trusts, which proximately caused the loss and/or a diminution of value of the trust assets." By their final claim for relief, which they parenthetically captioned "Tortious Interference with Inheritance," they alleged that National City Bank, Melek, and Mayo, "each of whom knew that there was an expectancy of inheritance by Plaintiffs through this trust, intentionally interfered with that expectancy by conduct that constituted fraud, duress and other tortious means." They demanded judgment against National City Bank, Melek, and Mayo, jointly and severally, for both compensatory and punitive damages.

On December 31, 1996, Mayo moved for summary judgment in case No. CV 95 01 0234. On May 15, 1996, plaintiffs responded to Mayo's motion for summary judgment. Also, on that same day, they moved for leave to amend their complaint, apparently to add additional examples of alleged self-dealing by Mayo and to change their third claim for relief, which they now parenthetically identified as "Breach of Fiduciary Duty by Mayo," by deleting any reference to tortious interference with inheritance and by asserting that Mayo had been "both an agent of, and a partner of, the trusts/trustees"; that he "breach[ed] his fiduciary duties, as an agent and partner of the trusts, resulting in financial loss to the trusts, and financial gain to Defendant Mayo"; and that, as a result, plaintiffs had been damaged. On June 6, 1997, prior to the trial court ruling on either Mayo's motion for summary judgment or plaintiffs' motion for leave to amend their complaint, plaintiffs dismissed case No. CV 95 01 0234 without prejudice.

Five days later, on June 11, 1997, plaintiffs commenced this action in the trial court. Their complaint in this case was identical to the amended complaint that they had sought leave to file in case No. CV 95 01 0234.

On October 17, 1997, Mayo moved the trial court for summary judgment. He argued (1) that, to the extent plaintiffs were seeking to recover based upon alleged breaches of fiduciary duty that occurred prior to June 11, 1993, their claims were barred by the four-year limitations period set forth in R.C. 2305.09

and that, in regard to the one transaction that took place after that date, "the Trustees [were] fully informed of the terms and conditions of the sale," and plaintiffs had agreed to that sale "through counsel," (2) that plaintiffs' claims were barred by the doctrine of laches, (3) that plaintiffs had suffered no damages, and (4) that plaintiffs would not be able to produce any evidence that he had breached any fiduciary duties.

On October 31, 1997, plaintiffs filed a motion, pursuant to Civ.R. 56(F), by which they sought additional time within which to respond to Mayo's motion for summary judgment to the extent that that motion was based upon the trustees' alleged knowledge of Mayo's "self-dealing and other activities." On that same date, they responded to the other parts of Mayo's motion for summary judgment.

In their response to Mayo's motion for summary judgment, plaintiffs initially argued that the four-year limitations period set forth in R.C. 2305.09 did not apply to their claims against Mayo. They further argued, however, that, if that statute did apply (1) their claims were subject to the "discovery rule", (2) the Ohio saving statute was applicable and, therefore, the relevant filing, for statute of limitations purposes, was their filing of case No. CV 95 01 0234, not their filing of the complaint in this action, and (3) Mayo had failed to establish that his alleged breaches of fiduciary duty were discovered prior to 1991. Plaintiffs also argued that their claims were not barred by latches, that they were damaged, and that Mayo did breach his fiduciary duty.

On February 9, 1998, the trial court granted defendant's motion for summary judgment. In doing so, it held (1) that the four-year limitations period set forth in R.C. 2305.09 was applicable to plaintiffs' claims against Mayo, (2) that the discovery rule was "clearly not applicable to such claims," (3) that Ohio's saving statute was not applicable in this case, and (4) that Mayo was entitled to summary judgment on plaintiffs' claims regarding the only transaction that had occurred within four years prior to June 11, 1997, because plaintiffs had consented to that transaction and, thereby, had "impliedly consented" to the aspect of that transaction about which they were complaining. On February 26, 1998, the trial court entered a *nunc pro tunc* order in which it amended its previous order granting Mayo summary judgment to provide: "There is no just reason for delay." Plaintiffs timely appealed to this court.

## II

Plaintiffs' sole assignment of error is that the trial court incorrectly granted Mayo's motion for summary judgment. In reviewing a trial court's ruling on a motion for summary judgment, this court applies the same test a trial court is required to apply in the first instance: whether there were any genuine issues of material fact and whether the moving party was entitled to judgment as a matter

of law. *Parenti v. Goodyear Tire & Rubber Co.* (1990), 66 Ohio App.3d 826, 829, 586 N.E.2d 1121, 1122–1123.

## A

Plaintiffs' first argument in support of their assignment of error is that the trial court incorrectly determined that the "discovery rule" did not apply to extend the statute of limitations applicable to their claims against Mayo. Pursuant to the discovery rule, certain causes of action do not accrue for statute of limitations purposes until the plaintiff discovers or, in the exercise of reasonable care, should have discovered the complained of injury. *Investors REIT One v. Jacobs* (1989), 46 Ohio St.3d 176, 179, 546 N.E.2d 206, 209.

As mentioned previously, plaintiffs initially argued in the trial court that the four-year limitations period set forth in R.C. 2305.09 was not applicable to their claims against Mayo. They have abandoned that argument on appeal and, accordingly, this court will assume, for purposes of this opinion, that all plaintiffs' claims against Mayo are within the coverage of R.C. 2305.09.

R.C. 2305.09 establishes a four-year limitations period for trespass upon real property, for recovery of personal property, for fraud, and "[f]or an injury to the rights of plaintiff not arising on contract nor enumerated in [certain other sections of the Ohio Revised Code]." It also provides that the discovery rule applies to certain causes of action within its coverage:

"If the action is for trespassing under ground or injury to mines, or for the wrongful taking of personal property, the causes thereof shall not accrue until the wrongdoer is discovered; nor, if it is for fraud, until the fraud is discovered."

Inasmuch as the legislature expressly provided that the discovery rule applies to certain claims within the coverage of R.C. 2305.09, it does not apply to other claims within the coverage of that statute. *Investors REIT One v. Jacobs,* 46 Ohio St.3d at 181, 546 N.E.2d at 210–211.

Mayo has argued that plaintiffs' claims of breach of fiduciary duty against him are claims for injuries "to the rights of plaintiff[s] not arising on contract nor enumerated [in the other sections of the Ohio Revised Code listed in Section 2305.09]." Therefore, according to him, those claims are not among those for which the legislature expressly provided that the discovery rule applied. Mayo's argument, however, fails to recognize the nature of plaintiffs' breach-of-fiduciary-duty claims against him in this case.

Although plaintiff's breach-of-fiduciary-duty claims against National City Bank and Melek appear to be based on their status as trustees, their claims against Mayo appear to be based upon his status as an agent for the trusts and

the trustees. But cf. *Shuster v. N. Am. Mtge. Loan Co.* (1942), 139 Ohio St. 315, 344, 22 O.O. 377, 390, 40 N.E.2d 130, 143; *Hammonds v. Aetna Cas. & Sur. Co.* (N.D.Ohio 1965), 7 Ohio Misc. 25, 39, 34 O.O.2d 138, 146–147, 243 F.Supp. 793, 803. The duties of an agent to his principal are dependent upon the agreement between them. See Restatement of the Law 2d, Agency (1958) 173, Section 376, Comment *a*. "Unless the parties have manifested an intent otherwise, the agreement is interpreted to be that which, in view of the conduct of the parties in light of all the circumstances, reasonable men in the position of the principal and agent would expect." *Id.*

Sections 379 to 398 of the Restatement contain a number of duties applicable to the usual principal and agent relationship. Of particular relevance to this case is Section 381:

"Unless otherwise agreed, an agent is subject to a duty to use reasonable efforts to give his principal information which is relevant to affairs entrusted to him and which, as the agent has notice, the principal would desire to have and which can be communicated without violating a superior duty to a third person."

Among plaintiffs' allegations against Mayo is that he made "express misrepresentations" of the real purpose of the February 12, 1983 agreement in order to obtain plaintiffs' signatures on that agreement and that he "entered into contracts and agreements with himself, purchasing property from his principal at less than fair market value, diverting income and assets to his personal businesses * * *, or to others in which he had an interest, without disclosing all of the knowledge that he had." These allegations appear to be assertions that Mayo breached the fiduciary duty recited in Section 381. More significantly for statute of limitations purposes, however, they are also allegations of fraud.

Plaintiffs' claim that Mayo made "express misrepresentations" regarding the real purpose of the February 12, 1983 agreement is a classic assertion of fraudulent misrepresentation. See Restatement of the Law 2d, Torts (1977) 55, Section 525. Their allegation that he entered into agreements with himself and others, "without disclosing all of the knowledge that he had," is an assertion of fraudulent concealment. See Restatement of Torts, Section 550. Although liability for nondisclosure only arises when there is a duty to disclose, the agency relationship, and the resulting fiduciary duty, supplies that duty to disclose based upon plaintiffs' allegations in this case. See Restatement of Torts, Section 551(2)(a) and Comment *e*. Although plaintiffs parenthetically captioned their claims against Mayo as "Breach of Fiduciary Duty," therefore, those claims could also have been captioned "Fraud."

In *Doe v. First United Methodist Church* (1994), 68 Ohio St.3d 531, 536, 629 N.E.2d 402, 406–407, the Ohio Supreme Court held that it is necessary to look to the "essential character" of a plaintiff's claim in order to determine the applicable

statute of limitations. In that case, a plaintiff had filed a complaint in which he averred that he had been sexually abused. He sought recovery based upon theories of battery, negligence, and intentional infliction of serious emotional distress. The Ohio Supreme Court held that plaintiff's claim was essentially a claim of battery and that, therefore, the one-year statute of limitations for battery was applicable:

"The fact that appellant pled negligence and intentional infliction of emotional distress cannot be allowed to mask or change the fundamental nature of appellant's causes of action which are predicated upon acts of sexual battery." *Id.* at 537, 629 N.E.2d at 407.

In *Investors Reit One v. Jacobs* (Apr. 7, 1988), Franklin App. Nos. 86AP–118 and 86AP–119, unreported, 1988 WL 37538, the Tenth District Court of Appeals earlier applied reasoning similar to that of the Supreme Court in *Doe* to conclude that the discovery rule applies to breach-of-fiduciary-duty claims based upon fraud:

"Actions concerning breaches of trust involving tortious conduct are governed by the four-year limitation period found in R.C. 2305.09(D). * * * Fraudulent breaches of fiduciary duty are governed by the same statute of limitations. Though the limitation period for breach of fiduciary duty usually begins to run at the time the trusteeship to the fiduciary is terminated, in case of fraudulent breach, a discovery rule applies." [3]

In affirming the decision of the Tenth District Court of Appeals, the Ohio Supreme Court specifically wrote that the court of appeals had correctly applied the discovery rule to plaintiffs' breach-of-fiduciary-duty claim:

"Since the discovery rule set forth in R.C. 2305.09[ ] is applicable to claims founded in fraud, conversion and breach of trust by the terms of the statute, the court of appeals appropriately reversed and remanded the summary judgments granted on such claims." *Investors REIT One v. Jacobs*, 46 Ohio St.3d at 182, 546 N.E.2d at 211–212.

Inasmuch as the "fundamental nature" of plaintiffs' claims against Mayo was fraud, those claims fall within the legislature's explicit provision that fraud claims do not accrue "until the fraud is discovered." The trial court, therefore, incorrectly determined that the discovery rule did not apply to extend the statute of limitations applicable to plaintiffs' claims against Mayo. Plaintiffs' first argument in support of their assignment of error is sustained.

---

3. In view of the Ohio Supreme Court's reasoning in *Doe*, it appears that, when the tortious conduct alleged to be a breach of fiduciary duty is fraud, subsection (C) of Section 2305.09 is applicable rather than subsection (D).

## B

Plaintiffs' second argument in support of their assignment of error is that the trial court incorrectly determined that Ohio's saving statute did not apply in this case. Inasmuch as the trial court determined that the "discovery rule" did not apply in this case, it became necessary for it to determine which, if any, of the transactions about which plaintiffs were complaining had occurred within four years prior to the date this action was "commenced" for statute of limitations purposes. Normally, an action is commenced upon the date the complaint in that action is filed. R.C. 2305.19, however, provides that, if an action has been commenced and "the plaintiff fails otherwise than upon the merits" after the statute of limitations has expired, the plaintiff may commence a new action within a year following that failure. Plaintiffs argued to the trial court that this action was a refiling of case No. CV 95 01 0234 and that, therefore, the relevant date for statute of limitations purposes was January 19, 1995, the day plaintiffs filed their complaint in case No. CV 95 01 0234, not June 11, 1997, the day plaintiffs filed their complaint in this case.

The trial court determined that R.C. 2305.19 did not apply in this case. The basis for that determination was the trial court's belief that this action was not a refiling of case No. CV 95 01 0234:

"While the original complaint alleged that Defendant Mayo had engaged in tortious interference with Plaintiffs' expectancy of inheritance, a claim sounding in fraud, the complaint in the case sub judice alleges that such Defendant breached his fiduciary duty as a partner and/or agent of the trust. Since a cause of action for fraud is distinct from a claim for breach of fiduciary duty, the savings statute is not applicable."

Based upon its determination that the saving statute did not apply in this case, coupled with its determination that the discovery rule did not apply to plaintiffs' claims against Mayo, the trial court held that this action was timely only to the extent that plaintiffs had alleged claims based upon transactions that had occurred after June 11, 1993. There was only one such transaction about which plaintiffs were complaining.

As noted previously, on the same day that plaintiffs responded to Mayo's motion for summary judgment, they also moved, pursuant to Civ.R. 56(F), for additional time to conduct discovery concerning National City Bank and Melek's discovery of Mayo's alleged misconduct.[4] Inasmuch as the trial court determined that the discovery rule did not apply to plaintiffs' claims against Mayo, it

---

4. The trial court and both parties seem to have assumed that it is the knowledge of the trustees that will determine when discovery took place. Accordingly, for purposes of this appeal, this court has made the same assumption.

determined that plaintiffs' Civ.R. 56(F) motion was moot and denied it on that basis. Because this court has now determined that the "discovery rule" is applicable to plaintiffs' claims, on remand it will be necessary for the trial court to consider plaintiffs' Rule 56(F) motion and, regardless of how it rules on that motion, also determine when "discovery" occurred for each of the transactions about which plaintiffs are complaining. If, for any transaction, discovery occurred more than four years prior to the filing of plaintiffs' complaint in case No. CV 95 01 0234, plaintiffs' claims based upon that transaction are barred, regardless of whether the saving statute applies. Similarly, if, for any transactions, discovery occurred within four years prior to the filing of the complaint in this case, plaintiffs' claims based upon that transaction are not barred, regardless of whether the saving statute applies. It will only be necessary, therefore, to determine whether the saving statute applies in this case if, for one or more transactions, discovery occurred less than four years prior to the filing of the complaint in case No. 95 01 0234 and more than four years prior to the filing of the complaint in this case, that is, if discovery occurred between January 19, 1991, and June 11, 1993. Particularly in view of the trial court's denial of plaintiffs' Civ.R. 56(F) motion, the record before this court is not sufficient for it to determine whether discovery occurred for any of the transactions about which plaintiffs are complaining between those two dates. Upon the present record, therefore, this court does not reach the question of whether the trial court incorrectly determined that the saving statute did not apply in this case. If, upon remand, it is necessary for the trial court to address that issue, it is free to do so.

## C

Plaintiffs' third argument in support of their assignment of error is that the trial court incorrectly determined that there were no genuine issues of material fact and that Mayo was entitled to judgment as a matter of law on the merits of plaintiffs' single claim that the trial court did not believe was barred by the statute of limitations. That claim grew out of a transaction during January 1996, pursuant to which Mayo sold certain partnership real estate to an entity known as Developers Diversified Realty Corporation for $8,950,000. By that time, case No. 95 01 0234 was already pending, and, accordingly, Mayo's counsel contacted plaintiffs' counsel to determine whether Mayo should proceed with the sale. The property was being sold for fair market value, and plaintiffs have conceded that they did not object and, in fact, instructed Mayo, through counsel, to proceed. Plaintiffs have argued, however, that, at the time of the sale, they did not know that Mayo would be receiving a real estate commission of $895,000 as part of the transaction. As noted previously, he was already being paid $5,250 per month by the trust to use his best efforts to sell trust property. Plaintiffs

have argued that Mayo's failure to disclose the $895,000 commission was a breach of his fiduciary duty.

In granting Mayo's motion for summary judgment as it related to this transaction, the trial court concluded that plaintiffs had failed to submit evidence that they did not know about the commission:

"Plaintiffs neither allege nor is there any evidence establishing that the commission was not revealed to them. Moreover, by consenting to the sale to Developers Diversified in accordance with the terms of the written option, Plaintiffs impliedly consented to the commission."

■ A party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429–430, 674 N.E.2d 1164, 1170–1172. Then, and only then, is there a reciprocal burden on the nonmoving party to respond by showing that there are genuine issues of material fact to be tried. *Id.*

In support of his motion for summary judgment, Mayo filed an affidavit of his counsel in which his counsel recited that plaintiffs were aware of the sale. He also pointed to a provision in the option agreement with Developers Diversified Realty Corporation that "[t]he commission or fee, if any, payable to Mayo & Orvets, Inc. shall be paid by Sellers."[5] He failed, however, to provide any evidence that plaintiffs had ever seen the option agreement or were even aware that it existed.

Mayo failed to carry his burden of pointing to parts of the record that showed that plaintiffs knew about the $895,000 real estate commission that he was receiving as a result of the sale to Developers Diversified Realty Corporation. Accordingly, the burden never shifted to plaintiffs to present evidence that they did not, in fact, know about that commission. Accordingly, Mayo was not entitled to summary judgment on the merits of the one claim that the trial court did not believe was barred by the statute of limitations. Plaintiffs' third argument in support of their assignment of error is sustained.

### III

■ Mayo has argued to this court that, even if he was not entitled to summary judgment for the reasons the trial court granted him summary judg-

---

5. Mayo & Orvets, Inc. is a corporation Mayo formed after Mr. Orvets's death. One of plaintiffs' allegations in their complaint in this case is that he misrepresented to the trustees and the public that it was the same corporation in which he and Mr. Orvets each owned half the shares before Mr. Orvets's death and in which he and the trust each owned half the shares after Mr. Orvets's death.

ment, he was entitled to summary judgment on alternative grounds. Specifically, he has argued (1) that plaintiffs were not damaged, (2) that plaintiffs' claims are barred by the doctrine of latches, and (3) that plaintiffs can present no evidence that he breached a fiduciary duty that he owed to the trustees. Although Mayo presented these arguments to the trial court, it did not consider them because of it having granted him summary judgment on the grounds previously discussed in this opinion.

Generally, in reviewing a trial court's ruling on a motion for summary judgment, it is unnecessary for this court to consider the analysis in which the trial court engaged in reaching its conclusion. The Ohio Supreme Court, however, in *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 604 N.E.2d 138, created an exception to this general rule.

In *Murphy*, the defendants, in reliance upon a number of depositions and other evidence, moved for summary judgment. The trial court held a hearing on the defendants' motion and, at the outset of that hearing, said, "Let me be up front with all of you. I haven't read your motion. I haven't read your briefs. So, educate me." *Id.* at 357, 604 N.E.2d at 140. Following arguments by defendants and the plaintiff, the trial court announced that it was granting the defendants' motion for summary judgment.

The Franklin County Court of Appeals determined that the trial court erred in not considering all the evidence that was before it. It further determined, however, that that error was harmless in regard to three of the defendants and harmless in part in regard to the other two defendants. In reaching that conclusion, the court of appeals noted that, in reviewing a grant of summary judgment, an appellate court affords no deference to the trial court's decision. Having reviewed all the evidentiary materials itself, the court of appeals concluded that there were no genuine issues of material fact in regard to three of the defendants and that those three were entitled to judgment as a matter of law. In regard to the other two defendants, it determined that there were no genuine issues of material fact in regard to most of the plaintiff's claims against them and that they were entitled to judgment as a matter of law on those claims. It further found, however, that there were genuine issues of material fact in regard to some of the plaintiff's claims against those two defendants and that, therefore, summary judgment was not appropriate on those claims. *Id.* at 358, 604 N.E.2d at 139–140.

In reviewing the decision of the Franklin County Court of Appeals, the Ohio Supreme Court noted that Civ.R. 56(C) requires a trial court to "examine all appropriate materials filed by the parties before it when ruling on a motion for summary judgment." *Id.* at 358, 604 N.E.2d at 139. The Supreme Court determined that, even though an appellate court applies the same test as a trial

court when reviewing a grant of summary judgment, it does so with a "different focus" and that that different focus required it to reverse the court of appeals to the extent it had affirmed the decision of the trial court:

"The court of appeals concluded that its independent consideration of the record could, in effect, cure the trial court's failure to examine the evidence. We cannot accept that conclusion. A reviewing court, even though it must conduct its own examination of the record, has a different focus than the trial court. If the trial court does not consider all the evidence before it, an appellate court does not sit as a reviewing court, but, in effect, becomes a trial court. The clear language of Civ.R. 56(C) prevents us from sanctioning the interpretation given by the court of appeals." *Id.* at 360, 604 N.E.2d at 141.

It is understandable that the trial court did not pass upon the alternative grounds urged by Mayo in support of his motion for summary judgment because of its belief that he was entitled to summary judgment based upon the grounds that it did consider. In view of the Ohio Supreme Court's ruling in *Murphy,* however, it would be inappropriate for this court to consider the evidence presented by Mayo and plaintiffs and pass upon those grounds without the trial court first doing so. Accordingly, Mayo's alternative grounds for affirmance are overruled.

IV

Plaintiffs' assignment of error is sustained, and Mayo's alternative grounds for affirmance are overruled. The judgment of the trial court is reversed, and this matter is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

SLABY, P.J., and BAIRD, J., concur.