[Cite as *Ware v. King*, 187 Ohio App.3d 291, 2010-Ohio-1637.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

WARE ET AL.,                                          CASE NO. 9-09-34

    APPELLANTS,

  v.

KING ET AL.,                                          O P I N I O N

    APPELLEES.

Appeal from Marion County Common Pleas Court
Trial Court No. 08 CV 0979

Judgment Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Decision:  April 12, 2010

APPEARANCES:

    **Robert E. Wilson**, for appellants.

    **Cheryl L. Ryan**, for appellees.

    **ROGERS, Judge.**

{¶1} Plaintiff-appellants, Joshua and Lynda Ware, appeal the judgment of the Court of Common Pleas for Marion County granting summary judgment in favor of defendants-appellees, Adam King, Lori Wilson, and Thomas Wilson. On appeal, Joshua and Lynda contend that the trial court erred when it found that there was no question of material fact as to whether Adam's conduct was reckless, and when it found that Lori could not be liable for negligent supervision without prior knowledge that Adam's behavior would cause injury to Joshua. Based upon the following, we affirm in part and reverse in part the judgment of the trial court.

{¶2} The following facts are undisputed. In September 2004, Adam, Joshua, and two other boys, all minors at the time, participated in a squirrel-hunting contest on wooded property owned by Adam's uncle, Thomas. While the boys were hunting, Adam unintentionally shot Joshua, causing him serious injuries. In February 2007, Joshua and his mother, Lynda (hereinafter jointly referred to as "appellants"), filed a complaint[1] seeking damages against Adam, Thomas, and Lori, Adam's mother (hereinafter collectively referred to as "appellees").

{¶3} In August 2007, Joshua was deposed and stated that in that early morning of 2004, he, Adam, Eric King, and Derek Blair had participated in a squirrel-hunting contest among themselves; that he had been dressed completely in camouflage except for a blue and white baseball cap; that he had not been wearing

---

[1] This original complaint was not made a part of the record.

anything that was hunter orange; that he had never hunted in Thomas's woods before and had not asked anyone for permission to hunt in the woods; that Adam had told him that he "took care of it and [the boys] would be allowed to hunt"; that he had no knowledge whether Thomas or Lori had known that the boys were going squirrel hunting that day; that when they got to the woods, the boys had sat in a straight line with approximately 50 to 75 yards between each person; that Adam had yelled at Derek to move, and Derek had stood up and had backed away from being in the straight line; that he had been situated between Adam and Derek; that he had turned back and had looked straight ahead, had taken off his blue and white baseball cap and had waved it in the air to alert the other boys of his location; that approximately ten seconds later, he had been shot and had fallen face down on the ground; that he had lost consciousness, and when he regained consciousness, he was bleeding from his ears, nose, and mouth; that the boys helped carry him out of the woods, and he had been transported to the hospital by ambulance; that he discovered he had been shot underneath his left eye; that the doctors informed him that the bullet had penetrated his cheekbone, had gone through his sinus cavity and jaw, and had lodged in his neck behind his ear; that due to his injuries, his nose is larger, he has sinus problems, he occasionally coughs up blood, he has lost sensation in part of his face, his jaw is very tight and cracked, he experiences ringing in his ear, he suffers from depression, he has

nightmares, and he has high blood pressure due to posttraumatic stress on his body.

{¶4} Adam was deposed and stated that he had been hunting since he was 13 years old; that he had taken an educational hunting course prior to the incident and had obtained his hunting license; that on the date of the incident, he participated in the squirrel-hunting contest with a .22 Remington rifle with a scope that belonged to Thomas; that he had never used that particular gun before and had not asked Thomas for permission to use it; that he had retrieved the ammunition for the gun from the gun cabinet; that he had not told Thomas that he planned to hunt in his woods or that he was going to take his gun without his permission; that there were no rules on how the boys were going to conduct their hunt, and they did not discuss staying in a straight line; that he had sat about 50 or 60 feet from Eric and had "lost Josh when he was walking around in the woods"; that Eric had been behind him, and he believed that Joshua was on the other side of Derek; that he had thought that he saw a squirrel between him and Derek, about 20 to 30 yards away from him; that he had raised his gun and had fired it; that he had heard Joshua screaming that he had been shot; and that he had not seen Joshua in the scope.

{¶5} Lori was deposed and stated that she had been aware that the boys were having some kind of contest because she had heard them talking about it the prior week, but that she did not know when or where the contest was going to take

place and did not know and did not ask whether it involved squirrel hunting; that she was sleeping the morning of the incident; that neither Adam nor Eric had asked her for permission to go hunting, and she had never taken them hunting; that she was not aware whether the boys had ever been hunting on Thomas's property or anywhere else by themselves; that she had never talked with Adam about taking his uncle's gun from the gun cabinet in their home without permission; that she had told Adam not to go onto his uncle's property without permission and that Adam had known that he needed permission from his uncle; that she did not know anything about the guns in the gun cabinet and had "nothing to do with guns"; and that she had not instructed Adam and Eric to stay out of the gun cabinet.

{¶6}  In November 2007, appellants' complaint was dismissed pursuant to Civ.R. 41.[2]

{¶7}  In November 2008, appellants refiled their complaint against appellees, alleging in Count I that Adam was a 17-year-old minor and the owner of a Remington .22 caliber rifle; that Lori was Adam's mother and legal guardian; that Thomas was the owner of a wooded piece of property located in Marion County; that on September 5, 2004, Adam and Joshua hunted on Thomas's wooded property with his permission; that Adam negligently, recklessly, and

---

[2] Appellants' November 2008 complaint asserted that the original February 2007 complaint was dismissed by appellants "without prejudice pursuant to Civ.R. 41(A)(2)"; however, we note that Civ.R. 41(A)(2) provides for voluntary dismissal by order of the court, while Civ.R. 41(A)(1)(a) provides for voluntary dismissal by the plaintiff's filing of a notice of dismissal. As the November 2007 dismissal was not made part of the record, however, we cannot ascertain which subsection of Civ.R. 41 was applied.

carelessly fired his rifle in Joshua's direction, shooting him in the face; and that as a result of Adam's negligence, recklessness, and carelessness, Joshua has sustained serious bodily injuries resulting in permanent disability, pain and suffering, mental and emotional distress, and medical expenses. In Count II, appellants alleged that Joshua's injuries were a direct proximate result of Lori's negligent supervision of Adam. In Count III, appellants alleged that Joshua's injuries were a direct, proximate result of Thomas's negligence in allowing minors to hunt on his wooded property, failing to supervise the minors, and failing to secure his firearm and ammunition. In Count IV, appellants alleged that Lynda sustained the loss of Joshua's society and companionship and incurred $51,284 in medical expenses on behalf of Joshua.

{¶8} In December 2008, appellees filed a collective answer to the complaint, denying many of appellants' allegations and asserting defenses, including that some or all of appellants' claims were barred by the applicable statute of limitations.

{¶9} In April 2009, appellees filed a motion for summary judgment, asserting that appellants' claims of recklessness and negligent failure to secure a firearm and ammunition were barred by the statute of limitations; that Joshua and Adam had been engaged in a recreational activity at the time of the incident, and therefore, that appellees could not be held liable for negligence or carelessness; that Lori did not negligently supervise Adam; and that Thomas could not be held

liable for negligently allowing minors to hunt on his wooded property, or for failing to supervise the minors, because he did not know that the minors were hunting on his property. Appellees supported their motion with an affidavit of Lori, asserting that she was sleeping at the time of the incident; that she did not know Adam was hunting on the day of the incident; that Adam had taken a hunting safety course and had a hunting license at the time of the incident; that to her knowledge, Adam had never had any accidents or injured anyone while hunting; and that she had not been aware that Adam had any propensity to harm others. Additionally, appellees supported their motion with an affidavit of Thomas asserting that prior to the incident, he had never met Joshua; that prior to the incident, he had never given Adam permission to hunt in his woods without his being present, nor did he have knowledge that Adam had hunted in his woods without his permission; and that on the date of the incident, he did not give anyone, including Adam or Joshua, permission to hunt in his woods, nor did he know that they had planned to hunt in his woods.

{¶10} In July 2009, appellants filed a memorandum contra to appellees' motion for summary judgment, asserting that their claims of recklessness and negligent failure to secure a firearm and ammunition were not barred by the statute of limitations because it was a new claim arising out of the same conduct as stated in the original pleading, invoking the saving statute; that even if Joshua had voluntarily participated in the recreational hunting activity, he had not necessarily

assumed the risk that a fellow hunter would negligently discharge his firearm; and that Joshua's injury was foreseeable to Lori because she had known that the minors were intending to hunt squirrels, and she had failed to supervise them.

{¶11} Thereafter, appellees filed a reply memorandum in support of their motion for summary judgment, reasserting their previous arguments and asserting, for the first time, that there was "no evidence that Adam acted recklessly or intentionally, Plaintiffs' claims are barred, and Defendant, Adam King [was] entitled to summary judgment."

{¶12} In August 2009, the trial court granted summary judgment in favor of appellees, finding that appellants' claims of recklessness and negligent failure to secure a firearm and ammunition were not barred by the applicable statute of limitations as appellees had argued, noting that neither party had made a copy of the original complaint a part of the record; that as Adam and Joshua had been engaged in a recreational activity at the time of the incident, they had assumed the ordinary risks of that activity and could not recover unless the other participants' actions were reckless or intentional; that Adam's act of shooting Joshua, which was undisputedly unintentional, did not constitute reckless or intentional conduct; that Lori did not negligently supervise Adam because it was not foreseeable that Adam would injure Joshua; that Thomas did not negligently permit Adam and Joshua to hunt on his wooded property, as the record was devoid of any evidence that he had known they were going to hunt on his property; and that Thomas did

not negligently fail to secure his firearm and ammunition because there was no evidence in the record that he was incompetent in storing these items at the residence where Adam resided.

{¶13} It is from this judgment that Joshua and Lynda appeal,[3] presenting the following assignments of error for our review.

*Assignment of Error No. I*

The trial court erred when it found that there is no question as [sic] of material fact for a jury to decide whether a hunter's conduct is reckless when the hunter has a rifle with a scope and fails to identify his target 60 to 90 feet away and pulls the trigger which results in shooting his fellow hunter in the head when he knew another hunter was located in that direction.

*Assignment of Error No. II*

The trial court erred when it found that in order for the jury to find a parent liable for negligent supervision that the parent must have prior knowledge that her son's behavior would injure the plaintiff.

*Assignment of Error No. I*

{¶14} In his first assignment of error, Joshua argues that the trial court erred when it found that there was no question of material fact as to whether Adam's conduct was reckless. Specifically, Joshua argues that he demonstrated Adam's recklessness because Adam had a rifle with a scope and failed to identify his target 60 to 90 feet away and had fired the rifle in a direction in which he knew Joshua was located, shooting him in the head. Before reaching Joshua's argument,

---

[3] We note that appellants have not argued that the trial court erred in granting summary judgment to Thomas on the claims that he was negligent in allowing the minors to hunt on his property, in failing to supervise the minors, and in failing to secure his firearm and ammunition.

we find that due to the limited issues addressed in Adam's motion for summary judgment, the trial court could not grant summary judgment on the basis of lack of evidence of recklessness. Thus, we find that the issue of recklessness has not been adjudicated and reverse and remand in part the trial court's decision on that basis.

{¶15} An appellate court reviews a summary-judgment order de novo. *Hillyer v. State Farm Mut. Auto. Ins. Co.* (1999), 131 Ohio App.3d 172, 175. Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co.*, 148 Ohio App.3d 596, 2002-Ohio-3932, ¶ 25, citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.* (1994), 69 Ohio St.3d 217, 222. Summary judgment is appropriate when, as the court looks at the evidence as a whole, (1) there is no genuine issue as to any material fact; (2) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made; and, therefore, (3) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 686-687. If any doubts exist, the issue must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358-359.

{¶16} The party moving for summary judgment has the initial burden of producing some evidence that demonstrates the lack of a genuine issue of material

fact.  *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293.  In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record that affirmatively support his argument.  Id. at 292.  The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings.  Id.; Civ.R. 56(E).

**{¶17}** The Ohio Supreme Court has held that a party moving for summary judgment must "specifically delineate the basis upon which summary judgment is sought in order to allow the opposing party a meaningful opportunity to respond." *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, syllabus; see also *Heider v. Unknown Heirs of Bernot*, 6th Dist. No. WD-03-073, 2004-Ohio-3449, ¶ 3.  When a trial court awards summary judgment on grounds that were not delineated in the motion for summary judgment, it commits reversible error.  *Patterson v. Ahmed*, 176 Ohio App.3d 596, 2008-Ohio-362, ¶ 14.  Additionally, courts have held that "[a] passing allusion to a contested element is not sufficient to delineate it with specificity as the basis for a motion for summary judgment. Moreover, when a party expressly excludes from consideration elements that might be contested, it is not unreasonable for the responding party to rely on that exclusion when fashioning a response." *Patterson* at ¶ 16.

**{¶18}** Here, appellees' motion for summary judgment argued that appellants' claim of recklessness was barred by the statute of limitations and that

appellees could not be held liable for negligence because Adam and Joshua were participating in a recreational activity. The motion for summary judgment did not argue an absence of evidence of recklessness. Correspondingly, appellants' memorandum contra to the motion for summary judgment did not address the issue of alleged lack of evidence of recklessness. Because appellees asserted the argument regarding lack of evidence of recklessness for the first time in their reply to appellants' memorandum contra, appellants were not afforded a "meaningful opportunity to respond" to that specific argument. See *Heider*, 2004-Ohio-3449, at ¶ 4. Further, it was not unreasonable for appellants to rely upon the absence of this argument in fashioning their memorandum contra. See *Patterson*, 176 Ohio App.3d 596, 2008-Ohio-362, at ¶ 16. Based upon the preceding, we find that the trial court could grant only partial summary judgment on the negligence claim and that the trial court committed reversible error in granting summary judgment based on a lack of evidence of recklessness because this argument had not been specifically delineated in appellees' motion for summary judgment. See *Patterson* at ¶ 14.

{¶19} Finally, we note that appellees contend in their response to appellants' assignment of error that the trial court should have ruled that Joshua's claims were barred by the statute of limitations because he waited more than four years after the incident to refile his complaint, which he claims was in violation of R.C. 2305.10. It is well established that a party seeking to defend the trial court's

judgment, yet asking to modify its terms, must do so via filing a notice of cross-appeal. App.R. 3(C)(1); *Matthews v. Morris Sons Co.* (1997), 118 Ohio App.3d 345, 350, citing *Duracote Corp. v. Goodyear Tire & Rubber Co.* (1983), 2 Ohio St.3d 160. Here, appellees' argument seeks to modify the court's ruling, yet they have filed no cross-appeal or cross-assignment of error. Accordingly, we will not consider this argument, as it was not presented in accordance with the appellate rules. See App.R. 3(C)(1).

**{¶20}** Accordingly, we sustain appellants' first assignment of error, albeit on a different basis from that argued.

### *Assignment of Error No. II*

**{¶21}** In his second assignment of error, Joshua argues that the trial court erred when it found that Lori could not be liable for negligent supervision without prior knowledge that Adam's behavior would cause injury. Specifically, Joshua argues that Lori had known that the minors were intending to go squirrel hunting because she had heard them talking about it the week prior to the incident; that she never took any supervisory role concerning the hunting as to the location, participants, or weapons; and that she allowed the gun cabinet in her home to be unlocked and did not instruct Adam not to use the guns in the cabinet.

**{¶22}** At common law, parents are generally not liable for torts committed by their children. *Huston v. Konieczny* (1990), 52 Ohio St.3d 214, 217, citing *Elms v. Flick* (1919), 100 Ohio St. 186. "However, liability can attach when the

injury committed by the child is the foreseeable consequence of a parent's negligent act." *Huston* at 217, citing *Kuhns v. Brugger* (Pa.1957), 135 A.2d 395, 404, fn. 14. The Supreme Court of Ohio has held that liability can attach when parents (1) "negligently entrust their child with an instrumentality (such as a gun or car) which, because of the child's immaturity or lack of experience, may become a source of danger to others"; (2) fail "to exercise reasonable control over the child when the parent knows, or should know, that injury to another is a probable consequence"; or, (3) "know of the child's wrongdoing and consent to it, direct it or sanction it." (Citations and emphasis omitted.) *Huston* at 217-218. Additionally, "[t]o establish foreseeability of the act or injury [pursuant to negligent supervision], plaintiff must prove that specific instances of prior conduct were sufficient to put a reasonable person on notice that the act complained of was likely to occur." *Nearor v. Davis* (1997), 118 Ohio App.3d 806, 813.

{¶23} Courts have found injury to be a foreseeable consequence of a parent's negligent act in the following scenarios:

{¶24} In *Huston*, 52 Ohio St.3d 214, a plaintiff was injured in a car accident after leaving a party where the underage driver consumed alcohol. Construing the evidence most favorably to the plaintiff, the Supreme Court of Ohio concluded that the facts demonstrated that the defendants, parents of a minor, had authorized that minor to use their home for a party when they knew alcohol would likely be consumed; that the parents had known or should have known that

-14-

the minor would provide alcohol to other minor guests; and that the parents were not in the home during the party and knew there would be no adult supervision of the party. Consequently, the Supreme Court affirmed the judgment of the court of appeals, finding that genuine issues of material fact existed as to whether the defendants-parents were liable.

{¶25} In *Coolidge v. Riegle*, 3d Dist. No. 5-02-59, 2004-Ohio-347, a plaintiff-teacher was injured when a minor child, a second-grade student, struck her. Evidence demonstrated that the child suffered from autism and had problems with violent outbursts and striking others, including teachers, since kindergarten. This court reversed the trial court's grant of summary judgment to defendant-parents, finding that there were genuine issues of material fact as to whether the teacher's injuries were foreseeable.

{¶26} In *Gay v. O.F. Mossberg & Sons, Inc.*, 11th Dist. No. 2008-P-0006, 2009-Ohio-2954, a plaintiff was seriously injured when another minor child accidently shot him in the neck at the defendant-father's home. The appellate court reversed the trial court's grant of summary judgment to the defendant-father, finding that genuine issues of material fact existed as to whether the father had been negligent when he left a loaded shotgun in the house, fully accessible to his minor son, in violation of gun safety rules, the gun owner's manual, and the household rules for gun storage, and when there was evidence that the father had

observed his minor son "dry-fire" multiple guns inside the home on previous occasions, in violation of gun safety rules.

{¶27} Conversely, courts have found injury to be an unforeseeable consequence of a parent's negligent act in the following scenarios:

{¶28} In *Herzberg v. Am. Natl. Property & Cas. Co.*, 10th Dist. No. 05AP-292, 2005-Ohio-6639, a plaintiff was injured when a minor squirted her with a water gun, and she fell while running from him. The evidence demonstrated that the defendant-parent had never known his child to squirt any adult with a water gun; that he had observed his child aim the water gun at the plaintiff prior to the incident, but the child had stopped after being told not to squirt her; and that he was aware that the child's kindergarten teachers had notified him on multiple occasions that the child was "acting up" in school. The trial court found that the record did not contain any evidence that the defendant-parent had notice that his minor child might cause injury to the plaintiff, and the appellate court affirmed.

{¶29} In *Hau v. Gill* (July 14, 1999), 9th Dist. No. 98CA007061, 1999 WL 492633, a plaintiff was injured when a minor child swung a golf club, not knowing that anyone was standing behind him, striking the plaintiff. There was no evidence in the record that the child had a propensity for careless behavior, such as swinging a golf club in close proximity to another individual; therefore, the appellate court held that the trial court did not err in granting summary judgment to the defendants-parents on the issue of negligent supervision.

{¶30} In *Haefele v. Phillips* (Apr. 23, 1991), 10th Dist. No. 90AP-1331, 1991 WL 64896, a plaintiff was injured when a 17-year old child stabbed him with a marine combat knife. The appellate court held that reasonable minds could only conclude that the child's behavior prior to the incident would not have put a reasonable parent on notice that the child posed a danger to others, even though the child drank beer, had struck his mother and threatened his father on a prior occasion, had a deep interest in marine gear, and possessed several marine combat knives.

{¶31} In *Midwestern Indemn. Co. v. Wiser* (2001), 144 Ohio App.3d 354, a plaintiff's home had been damaged when an unattended minor found a lighter inside the residence and set fire to the garage. The trial court granted summary judgment in favor of the defendants-parents, and the appellate court affirmed, holding that there was inadequate evidence to create parental responsibility for the damage, even where the parents acknowledged that the child "needed supervision," had a "tendency to get into trouble," and had been caught playing with matches before, but had not set anything on fire before.

{¶32} Finally, in *Nearor*, 118 Ohio App.3d 806, 694 N.E.2d 120, plaintiffs sued when defendants-parents' 16-year-old son shot and killed their teenage son, alleging that the accidental shooting was foreseeable to the defendants. The defendants had left a loaded revolver in their bedroom, to which their minor son had access, had informed him of the gun's presence, and had warned him not to

touch it; the defendants had allowed the minor son to shoot the gun in the air before, but had not trained him in gun use; the defendants had warned their son that firearms were dangerous, could harm others, and should not be pointed at others; and the minor had been a reasonably good student and had displayed no major behavioral problems, but had been involved in petty criminal activity and had disobeyed several household rules. The trial court concluded and the appellate court affirmed that the plaintiffs' son's death was not foreseeable, given that none of the specific instances of the minor's prior conduct would alert a reasonable person that he was likely to shoot another.

{¶33} Here, Lori stated in her deposition that she had been aware that the boys were having some kind of contest because she had heard them talking about it the prior week, but that she did not know when or where the contest was going to take place and did not know and did not ask whether it involved squirrel hunting; that she was sleeping the morning of the incident; that neither Adam nor Eric had asked her for permission to go hunting, and she had never taken them hunting; that she had not been aware of whether the boys had ever been hunting on Thomas's property or anywhere else by themselves; that she had never talked with Adam about taking his uncle's gun without permission; that she had told Adam not to go onto his uncle's property without permission, and that Adam had known that he needed permission from his uncle; that she did not know anything about the guns in the gun cabinet and had "nothing to do with guns"; and that she had

not instructed Adam and Eric to stay out of the gun cabinet. We cannot find, from these facts offered by appellants, that they have demonstrated any evidence that Lori was negligent in supervising Adam because his conduct was foreseeable. The record produced by appellants is void of any evidence that specific instances of Adam's prior conduct would alert a reasonable person that it was likely that Adam would injure Joshua.

{¶34} Accordingly, we overrule appellants' second assignment of error.

{¶35} Having found error prejudicial to the appellants herein, in the particulars assigned and argued in the first assignment of error pertaining to appellants' recklessness claim, but having found no error prejudicial to the appellants pertaining to their negligence claim or in the second assignment of error, the judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this opinion.

Judgment affirmed in part,<br>
and reversed in part,<br>
and cause remanded

WILLAMOWSKI, P.J., and PRESTON, J., concur.