[Cite as *McDonald v. Corning*, 2014-Ohio-1614.]

COURT OF APPEALS
PERRY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| BARBARA MCDONALD | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellant | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| -vs- | : | |
| | : | |
| THE VILLAGE OF CORNING | : | Case No. 13-CA-00011 |
| | : | |
| | : | |
| Defendant - Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING:       Appeal from the Perry County Court
of Common Pleas, Case No.
10-CV-00136


JUDGMENT:       Reversed and Remanded


DATE OF JUDGMENT:       April 15, 2014


APPEARANCES:

For Plaintiff-Appellant                    For Defendant-Appellee

SHAWN J. ORGAN                         MICHAEL J. VALENTINE
ERIK J. CLARK                              Reminger & Co., LPA
Organ, Cole & Stock, LLP               65 East State Street, 4th Fl.
1335 Dublin Road, Suite 104D         Columbus, OH 43215
Columbus, OH 43215

*Baldwin, J.*

{¶1}    Appellant Barbara McDonald appeals a summary judgment of the Perry County Common Pleas Court dismissing her complaint for vandalism, desecration, negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, outrage and conversion against appellee The Village of Corning.

STATEMENT OF FACTS AND CASE

{¶2}    On February 24, 1957, appellant gave birth to a son named Michael at the Ball Clinic in New Lexington, Ohio.  Michael was immediately transferred by ambulance to Mount St. Mary's hospital in Nelsonville, where he died the next day.

{¶3}    Carl Hermey of the Carl Hermey Funeral Home handled the arrangements.  According to the death certificate and newspaper report, a graveside service was conducted on February 26, 1957, at the Millertown Cemetery; now known as Oakwood Cemetery, in Corning, Ohio.  Appellant's husband Glen attended the service, along with appellant's parents, the funeral director, and the minister.  Appellant was still bed-ridden following the birth and was unable to attend; however, Mr. Hermey brought the baby in a silver casket to her bedside at her parents' home before the service.

{¶4}    Several days later, appellant and Glenn visited Michael's grave.  They could not afford a headstone, but the grave was marked with a metal stake bearing Michael's name.  On March 15, 1957, appellant received an invoice from the funeral home for the casket, service, burial box, car service, and the grave site.  She paid the invoice to the funeral home.

{¶5} Through the years, appellant, her husband, and later their children would visit the grave site. At some point in the 1980's, the metal stake was removed, but they returned to the same spot.

{¶6} In 2009, appellant wished to place a headstone on Michael's grave. She noticed that there were tombstones near the spot she remembered as Michael's grave; however, the area where she believed him to be buried was still an open area.

{¶7} To confirm the location in which to place the headstone, appellant contacted Sherri Weiner, appellee's Fiscal Officer, Water Clerk, and Mayor's Court Clerk. As part of her job duties, Weiner maintains the deed book for the cemetery lots and a map of the cemetery. Weiner was unable to locate any record of Michael's burial in the cemetery. She was aware that every deed is not on the map, and there are some recordings on the map for which appellee does not have a deed. Weiner referred appellant to two members of the cemetery committee, John Hashman and Ruth Ferguson.

{¶8} Appellant met Hashman and Ferguson at the cemetery in the summer of 2009. Appellant showed them the spot where she believed Michael was buried. The maps in the possession of Hashman and Ferguson did not reflect the location of Michael's burial. Further, all the lots in that area had been sold to others, except for Lot 13.

{¶9} Appellant met with Hashman and Ferguson a second time in the summer of 2009. She asked if Lot 13 was available for her to purchase to place Michael's headstone until Michael's body could be found. She was informed that it was available, but she would have to pay $500.00 for the lot. Appellant did not wish to purchase this

lot for $500.00, because she believed she had paid for a lot in 1957. According to appellant, Hashman told her that bodies had been buried on top of bodies in the cemetery, and appellant became concerned that Michael had been buried over with another body.

{¶10} On February 19, 2010, appellant asked the village to perform ground penetrating radar (GPR) to attempt to locate Michael. Counsel for the village responded that the village did not have funds to do so. Counsel later told counsel for appellant that the insurance carrier for the village would not cover the GPR because there were no current claims seeking damages.

{¶11} On March 26, 2010, appellant filed the instant case against the village. Appellant paid for a GPR scan to be conducted on August 17, 2010. The scan revealed evidence of an anomaly under the grave of Edna Fenneken in the area where appellant believed Michael was buried. On September 28, 2011, appellant paid an excavation company to dig in the vicinity of Edna Fenneken's grave. The excavation revealed that the anomaly below Fenneken's casket was a flat rock formation.

{¶12} Appellee filed a motion for summary judgment. The court granted the motion on the basis that appellant had presented no evidence that the village was paid for a lot, and that the village therefore owed no duty to appellant regarding the remains of Michael.

{¶13} Appellant assigns two errors on appeal:

{¶14} "I. THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT ON ALL OF PLAINTIFF BARBARA MCDONALD'S CLAIMS ON THE GROUND THAT MCDONALD HAD NO EVIDENCE TO SUPPORT THE BASIC AND

NON-CONTROVERSIAL FACTS THAT DEFENDANT THE VILLAGE OF CORNING BURIED MCDONALD'S INFANT SON IN ITS CEMETERY AND THAT CORNING RECEIVED PAYMENT FOR THE BURIAL PLOT.

{¶15} "II. THE TRIAL COURT ERRED WHEN IT FOUND THAT DEFENDANT THE VILLAGE OF CORNING OWED NO DUTY WHATSOEVER TO PLAINTIFF BARBARA MCDONALD REGARDING THE PROPER MAINTENANCE OF RECORDS AND PROPER PRESERVATION OF THE REMAINS OF MCDONALD'S INFANT SON."

{¶16} Both assignments of error allege that the court erred in granting appellee's motion for summary judgment.

{¶17} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 36 (1987). As such, we must refer to Civ. R. 56(C) which provides in pertinent part: "Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is

made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

{¶18}   Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed.  The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case.  The moving party must specifically point to some evidence which demonstrates that the moving party cannot support its claim.  If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating that there is a genuine issue of material fact for trial.  *Vahila v. Hall*, 77 Ohio St.3d 421, 429, 1997-Ohio-259, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 1996-Ohio-107.

I.

{¶19}   In her first assignment of error, appellant argues that the court erred in finding that there was no evidence that the village was paid for a plot for appellant's child and no evidence that Michael was buried in the village cemetery.

{¶20}   In her deposition, appellant testified that she paid the funeral director for services rendered in connection with Michael's burial.  The bill from the funeral home reflects that she was charged for a grave space and for the opening and closing of the grave.  Both the death certificate and the newspaper obituary reflect that Michael was buried in the Millertown cemetery, which is now known as the Oakwood Cemetery.  Although appellant did not attend the graveside ceremony, she testified that she visited

the grave with her husband several days after the service and continued to visit the grave off and on through the years. She further testified that until the 1980's, a metal stake with Michael's name on it marked the gravesite. Although the evidence reflects that appellant dealt only with the funeral home and not directly with appellee regarding Michael's burial, there is sufficient evidence, when construed most strongly in appellant's favor, from which reasonable minds could conclude that Michael was in fact buried in the cemetery and that the funeral home handled the payment to appellee for the grave on her behalf.

{¶21} The first assignment of error is sustained.

II.

{¶22} In her second assignment of error, appellant argues that the court erred in finding that the village owed no legal duty to her because she dealt solely with the funeral home and not with the village.

{¶23} The court's finding that the cemetery owed appellant no duty with regards to Michael's remains is based on the court's finding, discussed in the first assignment of error, that appellant did not present evidence that she paid appellee for a grave or that Michael was actually buried in the cemetery. For the reasons stated in the first assignment of error, reasonable minds could conclude that appellant paid the funeral home for a grave in the Millertown cemetery, the funeral home handled the purchase of the grave on her behalf, and Michael was buried in the cemetery on February 26, 1957. Therefore, the court erred in finding that reasonable minds could only conclude that the village owed appellant no legal duty.

{¶24} The second assignment of error is sustained.

{¶25} Appellee argues that the summary judgment should be affirmed on the following alternative grounds: appellee is immune from liability pursuant to the doctrine of sovereign immunity, the action was filed outside the applicable statute of limitations, appellant presented no evidence of serious emotional distress, appellant presented no evidence of intent or of extreme and outrageous conduct, appellant cannot maintain an action for conversion, and appellant is precluded from recovering punitive damages and attorney fees.

{¶26} We decline to consider alternate grounds in support of the motion for summary judgment for the first time on appeal where the trial court has not engaged in a review of the issue in the first instance. See *Schmucker v. Kurzenberger*, 9th Dist. Wayne App. No. 10CA0045, 2011-Ohio-3741, ¶14; *Orvets v. Natl. City Bank, Northeast*, 131 Ohio App. 3d 180, 194, 722 N.E.2d 114 (1999); *Lang v. Holly Hill Motel, Inc.,* 4th Dist. Jackson No. 05CA6, 2005-Ohio-6766, ¶2-23. The trial court did not consider appellant's claims that summary judgment is appropriate because the action was filed outside the applicable statute of limitations, appellant presented no evidence of serious emotional distress, appellant presented no evidence of intent or of extreme and outrageous conduct, appellant cannot maintain an action for conversion, and appellant is precluded from recovering punitive damages and attorney fees. We decline to consider these claims for the first time on appeal.

{¶27} The trial court found that appellee was not immune from the instant action based on the doctrine of sovereign immunity. Appellee has not challenged this finding by way of cross assignment of error or cross appeal. App. R. 3(C)(1) provides, "A person who intends to defend a judgment or order against an appeal taken by an

appellant and who also seeks to change the judgment or order or, in the event the judgment or order may be reversed or modified, an interlocutory ruling merged into the judgment or order, shall file a notice of cross appeal within the time allowed by App.R. 4." Although appellee is defending the order of the court, appellee seeks to change the ruling of the court on the issue of sovereign immunity in the event we reverse the summary judgment of the court on the issue of existence of a legal duty. Because appellee has not challenged this finding by way of cross appeal or cross assignment of error, we decline to consider this argument. See *Ware v. King*, 187 Ohio App. 3d 291, 931 N.E. 2d 1138, 2010-Ohio-1637, ¶19.

{¶28} The summary judgment of the Perry County Common Pleas Court is reversed. This cause is remanded to that court for further proceedings according to law and consistent with this opinion. Costs are assessed to appellee.

By: Baldwin, J.

Hoffman, P.J. and

Farmer, J. concur.