[Cite as *Massillon City School Dist. Bd. of Edn. v. Massillon Edn. Assn.*, 2014-Ohio-3197.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MASSILLON CITY SCHOOL DISTRICT BOARD OF EDUCATION | JUDGES:<br>Hon. William B. Hoffman, P. J.<br>Hon. W. Scott Gwin, J. |
| Plaintiff-Appellant | Hon. John W. Wise, J. |
| -vs- | Case No. 2013 CA 00208 |
| MASSILLON EDUCATION ASSOCIATION, OEA/NEA | O P I N I O N |
| Defendant-Appellee | |

CHARACTER OF PROCEEDING:    Civil Appeal from the Court of Common
Pleas, Case No. 2013 CV 01628

JUDGMENT:    Affirmed

DATE OF JUDGMENT ENTRY:    July 21, 2014

APPEARANCES:

For Plaintiff-Appellant

VIVIANNE WHALEN
Suite 206 Belden Village Tower
4450 Belden Village Street, NW
Canton, Ohio 44718

MARY JO SHANNON SLICK
2100 - 38th Street, NW
Canton, Ohio 44709-2312

For Defendant-Appellee

KATHLEEN K. McKINLEY
RACHEL M. REIGHT
DAVID FIFFICK
4150 Belden Village Street, NW
Suite 604
Canton, Ohio 44718

*Wise, J.*

{¶1}. Appellant Massillon City School District Board of Education appeals the decision of the Court of Common Pleas, Stark County, which confirmed an arbitrator's decision ordering a recall of laid-off bargaining unit employees of the Massillon City School District. Appellee Massillon Education Association OEA/NEA is the affected employees' union. The relevant facts leading to this appeal are as follows.

{¶2}. During the first several months of 2012, Appellant BOE was facing a situation of increasing fiscal restraints and a multi-year projection of growing deficits. The Ohio Department of Education required the school district to develop a budget recovery plan. Arbitration Transcript ("A.Tr.") at 122-123. A plan was submitted which contained budget cuts including a reduction in staff and the closing of three buildings.

{¶3}. Appellant BOE and Appellee MEA are parties to a collective bargaining agreement which covers full- or part-time salaried certified teachers, art, music and physical education specialists, librarians, guidance counselors, speech and hearing pathologists, and similar personnel.

{¶4}. Article 16 of the parties' collective bargaining agreement addresses reductions in force as follows:

{¶5}. "Article 16- Reduction in Staff * * *.

{¶6}. "16.012 Prior to any recommendation, the Superintendent will meet with the Association President to discuss the intended staff reduction prior to the Superintendent making any public recommendation to the Board.

{¶7}. "16.013 Prior to any recommendation, the Superintendent shall provide the Association President with the following:

{¶8}. "16.0131 A list of all bargaining unit members in the system by contract status, teaching field, continuous years of system-wide service in Massillon, and all areas of certification.

{¶9}. "16.0132 A list of specific positions to be reduced.

{¶10}. "16.0133 A reduction in force personnel list.

{¶11}. "16.0134 The reasons for such reductions."

{¶12}. Superintendent Richard Goodright, Assistant Superintendent Mark Fortner and legal counsel met with the representatives of Appellee MEA to discuss the recommended layoffs on April 18, 2012. Assistant Superintendent Fortner and Union President Wendy Snodgrass both testified about the meeting, which lasted for eight hours. A.Tr. at 86, 124. Five days later, on April 23, 2012, the BOE took action to eliminate twenty-one full-time positions in the bargaining unit, placing them on a recall list. Arb.Jnt.Exh. 4. Teachers, tutors, and non-teaching employees were affected by the layoff. A.Tr. at 122, 123.

{¶13}. Beginning on or about April 2012, Appellee MEA filed nineteen grievances concerning the lay-offs alleging various violations of the collective bargaining agreement, including the one involved in this action. The pertinent grievance procedure form alleged the following contract provisions as having been violated: Article 16.013, 16.0131, 16.0132, 16.0133, 16.0134. *See* Arb.Jnt.Exh. 2.

{¶14}. The matter proceeded to an arbitration hearing on February 6, 2013. The award is dated March 28, 2013, although it was apparently not received by Appellant BOE until April 12, 2013. The award sustained Appellee MEA's grievance and ordered the recall of those still on the recall list, as well as payment of lost wages and benefits.

Specifically, the arbitrator first found a violation of Section 16.012 on the basis that there was not sufficient "discussion" between the parties as required by the section. The arbitrator also found a violation of Section 16.0131 which requires a "list" of all bargaining unit members, concluding that since a second list of members was generated at the meeting, the provision requiring a list (singular) was violated. Finally, the arbitrator found violations of 16.0132 and 16.0133, finding, inter alia, that the reduction in force ("RIF") information must be in a list format, not a letter format.

{¶15}. The arbitrator therefore ordered a recall of all members remaining on the layoff list and compensation for all back wages and benefits for a time period they had not worked.[1]

{¶16}. On June 17, 2013, Appellant BOE filed an application for modification or vacation of the arbitrator's award pursuant to R.C. 2711.01 et seq. Appellee MEA thereafter filed a memorandum in opposition and a motion to confirm the arbitrator's award. The trial court ordered a briefing schedule and, at the request of Appellant BOE, also scheduled the matter for oral argument on September 23, 2013.

{¶17}. Following oral arguments, on October 4, 2013, the trial court issued a nine-page judgment entry. The trial court found that the arbitrator had exceeded his authority in finding a violation of CBA Section 16.012 (the aforementioned "discussion" provision), but otherwise overruled Appellant BOE's motion for modification or vacation of the arbitrator's award.

---

[1] It appears that by the beginning of the 2012-2013 school year, the BOE had recalled all but eight individuals on the original layoff list of twenty-one. *See* C.Tr. at 22. According to Appellant BOE, the arbitrator's award of back pay for these eight individuals would result in an outlay of approximately $430,000.00.

{¶18}. Following the trial court's decision, Appellant BOE requested that the trial court stay the decision pending appeal to this Court. The trial court granted the motion for stay.

{¶19}. Appellant BOE filed a notice of appeal on October 24, 2013. Appellant herein raises the sole Assignment of Error:

{¶20}. "I.    THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT DECLINED TO VACATE AN ARBITRATOR'S AWARD WHICH WAS UNLAWFUL PURSUANT TO R.C. §2711.10 AND 2711.11."

I.

{¶21}. In its sole Assignment of Error, Appellant BOE contends the trial court committed reversible error in declining to vacate the arbitrator's decision regarding the recall of laid-off MEA members. We disagree.

{¶22}. "For a dispute resolution procedure to be classified as 'arbitration,' the decision rendered must be final, binding, and without any qualifications or conditions as to the finality of an award. * * * The jurisdiction of the courts to review arbitration awards is thus statutorily restricted; it is narrow and it is limited." *Smith v. Palm Harbor Homes, Inc.,* Guernsey App.No. 05 CA 31, 2006–Ohio–5863, ¶ 14, quoting *Miller v. Gunckle,* 96 Ohio St.3d 359, 2002–Ohio–4932, 775 N.E.2d 475, ¶ 10 (additional citations and internal quotations omitted). It is generally recognized that the interpretation of the agreement and the determination of the factual matters are clearly within the powers of the arbitrator. *See Lancaster Educ. Ass'n. v. Lancaster City School Dist. Bd. of Educ.* (May 29, 1998), Fairfield App.No. 97 CA 82, citing *Hillsboro v. Fraternal Order of Police, Ohio Labor Council, Inc.* (1990), 52 Ohio St.3d 174, 556 N.E.2d 1186. Nonetheless,

R.C. 2711.10 provides for the ability of a common pleas court to vacate an arbitration award under certain circumstances. The applicable subsection in this case is subsection (D), which states a court shall vacate an award if the "arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

{¶23}. Thus, "[a] reviewing court's role in evaluating an arbitration award is limited to determining whether the award is unlawful, arbitrary, or capricious and whether it draws its essence from the collective bargaining agreement.* * * For an award to draw its essence from the CBA, there must be a rational nexus between the agreement and the award * * *." *International Assn. of Firefighters, Local 67 v. Columbus,* 95 Ohio St.3d 101, 102, 766 N.E.2d 139, 2002–Ohio–1936. (Citations omitted.) This Court reviews the trial court's decision de novo. *See Board of Trustees of Miami Township v. Fraternal Order of Police, Ohio Labor Council, Inc.* (1998), 81 Ohio St.3d 269, 690 N.E.2d 1262; *Piqua v. Fraternal Order of Police* (2009), 185 Ohio App.3d 496, ¶ 15.

{¶24}. Specifically, "[a]n arbitrator is confined to interpreting the provisions of a CBA as written and to construe the terms used in the agreement according to their plain and ordinary meaning." *International Assn. of Firefighters*, *supra*, at 103, citing *Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Emp. Assn., Local 11, AFSCME, AFL–CIO* (1991), 59 Ohio St.3d 177, 180, 572 N.E.2d 71.

{¶25}. In the case sub judice, the CBA limits an arbitrator's authority as follows:

{¶26}. "Article 19 - Grievance Procedure

{¶27}. "***

**{¶28}.** "19.0442 *** The arbitrator shall have no power to add to, subtract from or otherwise modify the terms and conditions of this agreement, nor shall the arbitrator be permitted to make a decision which is contrary to law."

**{¶29}.** In the case sub judice, we will address the pertinent  provisions of Article 16 of the CBA in turn.

### *Section 16.012*

**{¶30}.** Sec. 16.012 states as follows: "Prior to any recommendation, the Superintendent will meet with the Association President to discuss the intended staff reduction prior to the Superintendent making any public recommendation to the Board."

**{¶31}.** In this matter, the meeting before the BOE took place on April 23, 2012. The arbitrator ultimately ruled that although the Superintendent had met with the MEA President prior to his official recommendation, Appellant BOE had nonetheless violated Section 16.012 by failing to provide sufficient time to "discuss" the reduction-in-force issue, describing the April 18, 2012 notification as "last minute." Arb. Award at 13. The arbitrator reviewed dictionary treatment of the word "discuss" and determined that the term meant the involvement of conversation and input, not "*** simply telling the Association [MEA] what is going to happen, and who is going to be laid off." Arb. Award at 12.

**{¶32}.** The trial court found that the arbitrator had exceeded his authority, stating that Section 16.012 had not been cited by Appellee MEA on its grievance form. *See* Judgment Entry at 5.

**{¶33}.** Appellant BOE fully agrees with the trial court's decision that the arbitrator exceeded his authority regarding Section 16.012 and asks us to affirm that portion. *See*

Appellant's Brief at 7, 16. Interestingly, Appellee MEA argues against the trial court's decision on this point, even though no cross-appeal has been filed. It is well-established that under App.R. 3(C)(1), a party seeking to defend the trial court's judgment, yet asking to modify its terms, must do so via filing a notice of cross-appeal. *See Ware v. King,* 187 Ohio App.3d 291, 931 N.E.2d 1138, 2010–Ohio–1637, ¶ 19. Accordingly, we need not further address the trial court's conclusions regarding Section 16.012.

<u>*Section 16.0131*</u>

**{¶34}.** Sec. 16.0131 states that prior to any recommendation, the Superintendent shall provide the Association President with "[a] list of all bargaining unit members in the system by contract status, teaching field, continuous years of system-wide service in Massillon, and all areas of certification."

**{¶35}.** The arbitrator determined that information regarding the planned reduction-in-force was indeed given by Superintendent Goodright to MEA President Snodgrass before Goodright made his recommendations to the BOE. Arb. Award at 13. However, the arbitrator found that there had been no compliance with Section 16.0131 because the MEA had been given two lists. *Id.* The arbitrator specifically found, in part: "Ms. Snodgrass gave unrebutted testimony that at the April 18th meeting she was given two lists and she was not told which list was being used for the RIFs. In the Arbitrator's opinion, this was a clear violation of 16.0131 because the word 'list' is singular, not plural." *Id.*

**{¶36}.** Appellant BOE presently contends the arbitrator confused the member list (referenced in 16.0131) with the layoff list (referenced in 16.0133). Regarding Appellant BOE's claim that the arbitrator mixed up the lists, the trial court held as follows: "The

Board, in fact, may be right. But the issue appears cloudy. The Court stated at the oral hearing that during its own review of the Arbitrator's decision, briefs, and review of the arbitration transcript that the Court found the testimony regarding the 'list' to be confusing. The Board's own attorney concedes that this issue was 'confusing'." Judgment Entry at 6.

{¶37}. Clearly, the determination of factual matters is within the powers of the arbitrator. *Lancaster Educ. Ass'n., supra*. The Ohio Supreme Court has likewise recognized: "The only way to give effect to the purposes of the arbitration system of conflict resolution is to give lasting effect to the decisions rendered by an arbitrator whenever that is possible." *City of Hillsboro, supra,* at 176. Therefore, upon review, we hold the trial court did not err in upholding the arbitrator's interpretation of the facts and corresponding decision regarding the union member list requirement of Sec. 16.0131.

### Section 16.0132 and Section 16.0133

{¶38}. Section 16.0132 requires that the Superintendent provide the MEA President with "a list of specific positions to be reduced." Section 16.0133 further requires a provision of "a reduction in force personnel list."

{¶39}. The record indicates that at the meeting on April 18, 2012, MEA was provided with the staff position reduction list as set forth in Section 16.0132. Furthermore, on April 19, 2012, four days prior to the BOE meeting of April 23, 2012, MEA President Snodgrass confirmed receipt of a reduction in force list by email. In addition, Superintendent Goodright provided President Snodgrass with copies of the twenty-one layoff letters which had been sent to those on the reduction-in-force list. *See* Joint Exhibit 4.

**{¶40}.** The arbitrator found that the collection of layoff notice letters duly contained "all of the information required by 16.0132, 16.0133 and 16.0134." Award at 13. However, without mentioning the aforementioned supplied lists, the arbitrator found that the group of layoff letters was not in the "required format" under Section 16.0132 and Section 16.0133. Award at 14.

**{¶41}.** While the arbitrator's reasoning in stringently focusing on the layoff letters while ignoring the earlier standard lists supplied to MEA is unclear to this Court, it is incumbent we remain mindful that "mere error in the interpretation or application of the law will not suffice to vacate an arbitration award." *Massillon Firefighters IAFF Local 251 v. Massillon*, 5th Dist. Stark No. 2012CA00033, 2012-Ohio-4729, ¶ 22, citing *Cty. of Summit v. City of Cuyahoga Falls,* 9th Dist. Summit No. 21799, 2004–Ohio–1879, ¶ 7 (internal quotations and citations omitted). We have noted that "*** the trial court is precluded by statute from examining any legal or factual merits of a decision rendered pursuant to binding arbitration in the absence of fraud or bad faith on the part of the arbitrator." *FIA Card Services v. Young*, 5th Dist. Knox No. 08-CA-22, 2009-Ohio-2008, ¶ 33, citing *Creatore v. Robert W. Baird & Co.* (2003), 154 Ohio App.3d 316, 797 N.E.2d 127. We therefore hold the trial court did not err in upholding the arbitrator's decision regarding the position and reduction-in-force list requirement of Sections 16.0132 and 16.0133.

**{¶42}.** Furthermore, even if the trial court had decided to overturn the arbitrator's ruling as to Sections 16.0132 and 16.0133, the ruling as to a violation of Section 16.0131 (the "member list" requirement) would itself have provided sufficient grounds for the trial court to let stand the recall of the affected school employees.

### Remedy of Recall and Back Pay

{¶43}. Appellant lastly challenges the trial court's upholding of the arbitrator's choice of remedy. Upon review, we find the arbitrator's remedy of reinstatement and back pay put the parties in the position they would have been in had Appellant BOE not violated certain Article 16 CBA provisions. *See Mahoning Cty Bd. of Mental Retardation and Develop. Disabilities v. Mahoning County TMR Education Association,* 22 Ohio St. 3d 80, 84 (1986). Thus, we hold the trial court properly determined that the award was appropriate and that it drew its essence from the CBA.

### Conclusion

{¶44}. Upon review, we find the trial court did not err in determining the arbitrator had not exceeded his powers, and thereby upholding the arbitration award concerning the reduction in force of the bargaining unit members.

{¶45}. Appellant's sole Assignment of Error is overruled.

{¶46}. For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.

By: Wise, J.
Hoffman, P. J., concurs.
Gwin, J., dissents.


JWW/d 0623

*Gwin, J., dissenting*

**{¶47}** I respectfully dissent from the majority's decision.

**{¶48}** I begin with an observation. Everyone-the BOE, MEA and the trial court-agree and concede that no worker was laid-off who should not have been laid-off. In other words, the same individuals would have been laid–off had the BOE done everything exactly as the MEA argues it should have been done. (See, Stark County Court of Common Pleas Transcript, Sept. 23, 2013 at 46-50). [Hereinafter cited as "Court T."]

**{¶49}** Section 16.012 of the CBA does not require that the Superintendent meet with the Association President to discuss intended staff reduction any specific number of days before the Superintendent makes the public recommendation to the Board. Section 16.012 was never argued by either side at the arbitration hearing. It was never mentioned in the entire transcript of the arbitration hearing. (Court T. at 39). MEA conceded that Section 16.012 "was not something the [MEA] was alleging was violated." Court T. at 30. In her testimony, MEA President Wendy Snodgrass conceded that the CBA does not contain a provision that there must be a meeting "so many days prior" to Board action to allow the MEA the opportunity to convey its views about other possibilities. (Arbitration Transcript, Feb. 6, 2013, at 56; 59-61). [Hereinafter cited as "Arb. T."]

**{¶50}** Even the arbitrator in the case at bar agreed that "the [CBA] does not require Management to provide the Association with notice of an intended RIF a specific number of days in advance of the action being presented to the Board to vote on..." (Award at p.12) Yet, in spite of this explicit recognition of the terms of the CBA, the

arbitrator nonetheless grafted a "sufficient time" and "discussion" requirement onto Section 16.012. He further left it entirely to the subjective determination of each particular arbitrator as to what will suffice as a "reasonable time."

**{¶51}** The trial court agreed that the arbitrator exceed his authority. Nevertheless, the trial court affirmed the arbitration decision.

**{¶52}** I would find that the arbitrator effectively rewrote the CBA when he addressed a grievance that had not been initiated or pursed by the MEA in accordance with the procedures set forth in the CBA. *Fraternal Order of Police Capital City Lodge No. 9 v. Reynoldsburg*, 10th Dist. Franklin Nos. 12AP-451, 12AP-452, 2013-Ohio-1057, ¶29-¶30. I would further find that this arbitrator imposed time and discussion requirement so permeated the remainder of the arbitrator's decision that it cannot be excised. The trial court failed to consider that the arbitrator expressly conditioned the other violations upon the Board's violation of Section 16.012,

> In the Arbitrator's opinion, 16.012, 16.013, 0131, 0132, 0133 and 0134 *are interrelated*. The purpose of providing the required information is to *give the Association time and opportunity to discuss* the intended staff reduction, prepare and present possible alternatives and to work with members who will likely be affected by the RIF action. In the Arbitrator's opinion, given the *timing and the manner* in which the information was provided to the Association's President in conjunction with *16.012's clear meaning, Managements actions served to compound the seriousness of their having violated Sub-section 16.012 of the Agreement*. (Joint No.1)
> In conclusion, it is the Arbitrator's opinion that Management violated 16.0132 and 16.0133 of the Agreement. (Joint No. 1)
> Award at p. 14. (Emphasis added).

**{¶53}** Without reference to Section 16.012, the case boils down to the Board giving two lists at the April 13, 2013 meeting and the fact the Board gave MEA a "letter" as opposed to a "list" containing all the information required by Article 16.0132, 16.0133 and 16.0134. The evidence is clear the MEA president was given the required staff

position reduction list by email four days before the BOE meeting of April 23, 2012. Further, the record is undisputed that the collection of layoff notice letters did contain all the information required by Article 16.0132, 16.0133 and 16.0134. In addition, the president of the MEA testified that there is no specific language in the CBA that requires the information required by Section 16.0131 be given in a particular format. (Arb. T. at 52). Yet, the arbitrator imposed a format requirement upon Section 16.0131 by holding, in essence, that the Board can convey the information to the MEA in no other format than a "list." It therefore becomes obvious to me that the arbitrator did not interpret the contract as allowed by law, but rather based his award on matters not submitted to him and, in effect, added new provisions to the negotiated collective bargaining agreement.

{¶54} The concept of judicial deference in arbitration cases is not absolute. R.C. 2711.10 provides limited circumstances whereby a trial court may vacate an arbitration award. It states:

> In any of the following cases, the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if:
>
> * * *
>
> (D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

{¶55} "When determining whether the arbitrator exceeded his powers, the reviewing court must confirm the arbitration award if it finds that the arbitrator's award draws its essence from the collective bargaining agreement and it is not unlawful, arbitrary or capricious ." *Reynoldsburg City School Dist. Bd. of Edn. v. Licking Heights Local School Dist. Bd. of Edn.*, 10th Dist. No. 11AP–173, 2011–Ohio–5063, ¶ 22, *citing Miami Twp. Bd. of Trustees v. Fraternal Order of Police, Ohio Labor Council, Inc.*, 81

Ohio St.3d 269, 690 N.E.2d 1262 (1998), syllabus. "An arbitrator's award departs from the essence of a collective bargaining agreement when: (1) the award conflicts with the express terms of the agreement, and/or (2) the award is without rational support or cannot be rationally derived from the terms of the agreement." *Ohio Office of Collective Bargaining v. Ohio Civil Serv. Emps. Assn., Local 11, AFSCME AFL–CIO*, 59 Ohio St.3d 177, 180, 572 N.E.2d 71 (1991).

**{¶56}** Clearly, in the present case the arbitrator's interpretation of Section 16.012 and Section 16.0131 failed to draw its essence from the CBA. Specifically, the arbitrator's award conflicted with the express terms of the collective bargaining agreement, imposed additional requirements for notice, discussion and formatting not expressly provided in the agreement, and could not be rationally derived from the terms of the agreement. The arbitrator created, in effect, a contract of his own, rather than applying the contract agreed to by the parties. *Ohio Office of Collective Bargaining v. Ohio Civil Serv. Emps. Assn., Local 11, AFSCME, AFL–CIO*, 59 Ohio St.3d 177, 182-183, 572 N.E.2d 71 (1991).

**{¶57}** Finally, the arbitrator's remedy in the case is unsupported by any evidence. The MEA's position is that because the Board did not do it right they should be penalized. (Court T. at 51-52). The MEA does not argue that had the proper procedure been followed the result would have been different. As I have noted, no employee was laid-off who should not have been laid-off. The MEA has not shown any cognizable injury to any of the effected individuals. In sum, I conclude that the arbitrator exceeded his powers by granting MEA back pay and benefits. The trial court, therefore, did err in not vacating or modifying that award.

**{¶58}** In sum, I would conclude that the arbitrator exceeded his powers by grafting a time and discussion requirement onto Section 16.012 and by grafting a format requirement onto Section 16.0131. I would further find that because the arbitrator created a contract of his own, the whole of the arbitrator's decision departs from the essence of a collective bargaining agreement because: (1) the award conflicts with the express terms of the agreement, and/or (2) the award is without rational support or cannot be rationally derived from the terms of the agreement." *Ohio Office of Collective Bargaining v. Ohio Civil Serv. Emps. Assn., Local 11, AFSCME AFL–CIO, 59* Ohio St.3d 177, 180, 572 N.E.2d 71 (1991). Finally, the arbitrator exceeded his powers by granting MEA back pay and benefits where there is no evidence to support such an award.

**{¶59}** As such, I would find that the trial court erred in overruling the BOE's motion for modification or vacation of the arbitrator's award.

_____
HON. W. SCOTT GWIN